## ERSTEIN and another *v.* ROTHSCHILD and another.

*(Circuit Court, E. D. Michigan. 1884.)*

PRACTICE—ATTACHMENT—DEFECTIVE AFFIDAVIT—AMENDMENTS—REV. ST. §§ 914, 915, 938, 939.

> Where a writ of attachment has been issued in a suit instituted in the circuit court of the United States on a defective affidavit, the court may, when right and justice require it, allow such affidavit to be amended, although, under the statutes of the state in which the circuit court is held, the state court would have no power to allow such an amendment.

At Law.

MATTHEWS, Justice. On March 11, 1884, the plaintiffs, citizens of New York, commenced an action in this court against the defendants, citizens of Michigan, and caused a writ of attachment to issue, which was returned served by the seizure of certain personal property. The affidavit on which the writ was issued stated that "the defendants mentioned in said writ are indebted to the said plaintiffs in the sum of six hundred sixty-seven and 16-100 dollars, as near as may be, over and above all legal set-offs; that deponent's knowledge of such indebtness is based upon statements and admissions made to deponent by one of said defendants." It contains no other statement describing the origin or nature of the indebtedness, and omits the allegation that it was due upon contract, express or implied. The statute of Michigan (How. Annot. St. § 7987) provides that, "before any such writ of attachment shall be executed, the plaintiff, or some person on his behalf, shall make and annex thereto an affidavit stating that the defendant therein is indebted to the plaintiff, and specifying the amount of such indebtedness, as near as may be, over and above all legal set-offs, and that the same is due upon contract, express or implied, or upon judgment, and containing a further statement that the deponent knows, or has good reason to believe, either," etc.

On March 14, 1884, the defendants filed a petition for the dissolution of the attachment, denying those allegations of the affidavit which charged fraud, and which constituted the grounds of the attachment. The issue raised in this proceeding was referred to a commissioner to take and report the testimony, and afterwards, coming on to be heard before the court, the application to dissolve the attachment on the merits was denied. In the mean time, on March 25, 1884, the defendants entered their general appearance to the action. On April 11, 1884, they moved to quash the writ of attachment on the ground of the insufficiency of the affidavit in omitting the allegation that the indebtedness alleged was due upon contract, express or implied, or upon judgment. This was after the motion to dissolve the attachment on the merits had been denied. Thereupon the plaintiffs moved to amend the original affidavit and proceedings, upon affidavits filed showing that the omission of the allegation that the indebtedness was due upon a contract, was owing to the inadvertence

of the stenographer employed by plaintiffs' counsel in writing out the affidavit from notes taken from dictation, which omission was not observed when the affidavit was sworn to, and that, in point of fact, the indebtedness was due upon contract. The amendment was allowed by the court, and an order made granting the plaintiff leave to file an amended affidavit, *nunc pro tunc,* as of the date of the issuance of the attachment, and the motion of defendants to quash the attachment was, at the same time, denied, reserving leave, however, to have a rehearing of the whole matter. That reargument has now been had, upon which the motions to amend and to quash, respectively, have been submitted for decision. The motion for leave to amend the affidavit is resisted on these grounds: (1) That an affidavit conforming to the statute in all essential particulars is the foundation of the jurisdiction of the court to issue the writ, and is therefore in its nature not capable of amendment; (2) that by the statutes of Michigan, as construed by the supreme court of the state, the affidavit in attachment is not permitted to be amended, and the law of Michigan, by act of congress, is made obligatory upon this court.

On the other hand, it is not denied that under the laws of Michigan the affidavit originally made in the present case is defective; so that, on motion made at the proper time, if not amended by leave of court, the writ of attachment would have been quashed as erroneously issued; but it is at the same time insisted that this defect does not go to the jurisdiction of the court, and, being merely an error in procedure, was waived by the appearance of the defendants in the motion to dissolve the attachment on the merits; and that, in the discretion of the court, on good cause shown, the affidavit may be amended so as to have effect as if it had been originally issued in that form. It must be conceded that the supreme court of Michigan, in numerous decisions, have declared that the statutory proceedings in attachment are *stricti juris;* that they are proceedings *in rem,* and that the affidavit is jurisdictional. It follows that, in the local jurisdiction of that state, an affidavit defective in substance is not the subject of amendment, as without a sufficient affidavit there is no jurisdiction in the court, and the writ of attachment is void. In *Matthews* v. *Densmore,* 43 Mich. 461, S. C. 5 N. W. Rep. 669, it was decided by that court that the writ of attachment was void if the affidavit was defective, not only under the general law relating to attachments when the suit is begun by that writ, but also under the amendatory act of 1867, which permits the writ to issue in suits previously begun by summons served on the person of the defendant; and in an unreported case, (*Howard* v. *David D. Pratt, Circuit Judge, etc.,*) decided at the January term, 1882, it was held that a defective affidavit in garnishment could not be amended, even when the omitted allegation sought to be supplied was found in the affidavit for attachment in the same suit; the court saying: "The general statute of amendments does not authorize the filing of a substituted

affidavit in garnishment or attachment proceedings." This, however, was not always the law in Michigan. A statute passed in 1839, supplementary to the attachment law then in force, provided as follows: "But no writ of attachment shall be quashed on account of any defect in the affidavit on which the same issued, provided that the plaintiff, his agent or attorney, shall, whenever objection may be made, file such affidavit as is required by law."

When the Revised Statutes of 1846 were adopted, and which are readopted in the subsequent compilations and are now in force, this provision of the act of 1839, it appears, was dropped, and the general provision authorizing amendments was never applied. It necessarily follows, however, that while the act of 1839 was in force it could not have been thought that the affidavit was jurisdictional in the sense now held, that any substantial defect in it made it void, for otherwise it would not have been made capable of amendment. So that the effect adjudged to result from omitting the act of 1839 from subsequent revisions of the attachment law seems to have been a complete change in the character of that proceeding under it. It is, then, the doctrine enforced by the courts of Michigan that a writ of attachment is void unless supported by an affidavit conforming in all material respects to the strict requirements of the statute, from which the conclusion is deduced that the affidavit itself, being the foundation of jurisdiction, cannot be the subject of amendment. But this is not the doctrine of the courts of the United States in the case of *Matthews* v. *Densmore*, 109 U. S. 216, S. C. 3 Sup. Ct. Rep. 126. The supreme court of the United States reversed the supreme court of Michigan on this very point, and held that the jurisdiction of the court over the property taken by virtue of the writ of attachment did not at all depend upon the regularity or sufficiency of the affidavit; all questions of that character being questions merely of error in procedure. And the principle was then considered to have been fully established in *Cooper* v. *Reynolds*, 10 Wall. 308; and that such is the general rule, embracing the power of amendment, appears also from *Tilton* v. *Cofield*, 93 U. S. 163. In that case a statute of the territory of Colorado permitted amendments in attachment proceedings as was formerly done in Michigan. In addition, the court said:

"Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice. Usually, to permit or refuse rests in the discretion of the court, and the result in either case is not assignable for error. * * * Where no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others. Cases of this kind, too numerous to be cited, may be found, in which amendments in the most important particulars were permitted to be made."

But it is argued there is a rule of local law administered by the courts of Michigan which, by adoption by the Statutes of the United States, becomes also the law of this court. Section 914, Rev. St., is as follows:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes in the circuit and district courts, shall conform as near as may be to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

The purpose of this provision, as was said in *Nudd* v. *Burrows*, 91 U. S. 426, 441, was to bring about uniformity in the law of procedure in the federal and state courts of the same locality, having reference to the Code enactments of many of the states; yet, as was said in *Indianapolis & St. L. R. Co.* v. *Horst*, 93 U. S. 291, 300, "the conformity is required to be" as near as may be, "not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as congress doubtless expected they would do, any subordinate provisions in such state statutes which, in their judgment, would unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals. While the act of congress is to a large extent mandatory, it is also to some extent only directory and advisory." The act of congress, at any rate, does not require the adoption, with the local statutes, of the local interpretation which may have been put upon them, or which may from time to time be enforced. It must be held that the body of the local law thus adopted in the general must be construed in the courts of the United States in the light of their own system of jurisprudence, as defined by their own constitution as tribunals, and of other acts of congress on the same subject. It can hardly be supposed that it was the intent of this legislation to place the courts of the United States in each state, in reference to their own practice and procedure, upon the footing merely of subordinate state courts, required to look from time to time to the supreme court of the state for authoritative rules for their guidance in those details. To do so would be, in many cases, to trench in important particulars, not easy to foresee, upon substantial rights, protected by the peculiar constitution of the federal judiciary, and which might seriously affect, in cases easily supposed, the proper correlation and independence of the two systems of federal and state judicial tribunals. This is illustrated in the very case now under consideration, and in reference to attachments in general, as to which section 915, Rev. St., makes special provision. It enacts as follows:

"In common-law causes in the circuit and district courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the state in which such court is held for the courts thereof; and such circuit or district courts may from time to time, by general rules, adopt such state laws as may be in force in the states where they are held, in relation to attachment and other process; provided, that similar preliminary affidavits or proofs, and sim-

ilar security, as required by such state law, shall be first furnished by the party seeking such attachment or other remedy."

It is to be noted, in respect to this enactment, in the first place, that although its terms cover the case of a foreign attachment, properly so called, being process *in rem* against the goods and lands of a non-resident or absconding debtor, yet no such process can, in fact, issue, unless the defendant can be personally served with summons in the district in which the suit is brought; for by section 739, Rev. St., no suit can be brought against an inhabitant of the United States in any other district than that of which he is an inhabitant or in which he is found at the time of serving the writ, except in the case of absent defendants, under section 738, when suit is brought to enforce a lien upon real or personal property, and the cases specified in sections 740, 741, and 742, when defendants reside in separate districts, though in the same state, or the suit is of a local nature, and the subject, or the subject and the defendant, are in different districts contained in the same state. The attachment proceeding, therefore, in the courts of the United States has altogether a different character from that proceeding *in rem* in common use in the states, the object of which is either to enforce the appearance of the absent defendant or to subject his property to the payment of his debts. In the federal courts there must be jurisdiction over the person of the defendant and of a subject-matter, independent of the proceeding in attachment, and without which no attachment can be effectual. Everything pertaining to the attachment, therefore, arises and occurs in the course and progress of a pending suit, and is mere matter of procedure in the exercise of a jurisdiction otherwise acquired. Any irregularity, omission, or defect, therefore, in that proceeding is mere error, and does not and cannot affect the jurisdiction of the court; for that is acquired over his person by process served upon the defendant, and over his property attached by the actual seizure under the writ of attachment.

In the next place, it is to be observed that the federal courts are expressly authorized by this section to exercise their discretion in adopting any state legislation on the subject passed after the date of the Revised Statutes. It would seem to be a paradox if, nevertheless, they were bound by judicial interpretations, which, perchance, it may be the very object of subsequent legislation to annul. And, finally, it must be observed that the procedure in attachment contemplated by section 915, although adopted from the states, becomes by adoption incorporated into the system of pleading and practice of the courts of the United States, and must be construed as affected by other parts of the same system, and subject to any general and positive provisions which properly apply to and govern it. Among such provisions is that contained in section 948, Rev. St., which provides that "any circuit or district court may at any time, in its discretion and upon such terms as it may deem just, allow an

amendment of any process returnable to or before it, when the defect
has not prejudiced, and the amendment will not injure, the party
against whom such process issues." That this power of amendment
would extend to the affidavit, as well as to the writ which is based
on it, we have already seen from *Tilton* v. *Cofield*, 93 U. S. 163, and
no reason can be assigned why it should not apply in cases of at-
tachment. It is not a sufficient reason that the courts of Michigan
do not so apply a similar statutory provision for amendments, be-
cause the reasons on which these courts proceed do not apply to at-
tachment suits in the courts of the United States. Those reasons
are that the act of 1839 was a special statute of amendment, cover-
ing the case, and has been repealed, and that the affidavit in attach-
ment, in the view of those courts, is a matter of jurisdiction and not
of procedure. The power to amend conferred by section 948 is un-
conditional and positive, and cannot be limited by arbitrary qualifi-
cations. It applies, beyond doubt, to the· distinctive and special
proceedings in attachment authorized in favor of the United States
against defaulting and delinquent post-masters, contractors, and
other officers, agents, and employes of the post-office, as regulated by
section 924, Rev. St. at Large. It would be a curious anomaly if it
should not be held to apply in other cases of attachment under sec-
tion 915. There seems to be no sufficient reason for making any·
difference between them. It is not necessary to say that the power
to permit amendments in such cases is to be exercised according to
the sound discretion of the court to whom the application is ad-
dressed; and it is hot open to the observation that it will be author-
ized in any cases or circumstances except in those where right and
justice require it. It results from these views that the leave hereto-
fore granted to amend as prayed for is confirmed, and the motion to
quash the writ of attachment is overruled.