## FREDERICK V. BERGER *v.* E. FAXON BISHOP.

### DECIDED: JUNE 22, 1903.

1. The decision of the Board of Special Inquiry provided for by the Act of March 3, 1903, giving certain alien immigrants the right to land in the Territory of Hawaii, is not a bar to an action to recover the penalty for the unlawful bringing of said alien immigrants into the country, under Sections 4 and 5 of the Act of March 3, 1903, regulating the immigration of aliens into the United States (Vol. 32, Part 1, U. S. Stats., 1213).
2. Review of immigration laws of the United States supplementary to Sections 2158-2164, R. S. U. S.
3. The provisions of Section 914, R. S. U. S., are not mandatory upon this court; on the contrary, a discretion is left in the court as to whether it will follow technically the forms,. pleadings and modes of procedure of the courts of the territory.
4. In an action at law based upon the provisions of Sections 4 and 5 of the Act of Congress of March 3, 1903, entitled "An Act to regulate the immigration of aliens into the United States" (Vol. 32, Part 1, p. 1213, U. S. Stats.), where defendant pleaded as a bar to the action the decision of a board of special inquiry provided for by Section 25 of the Act, admitting the alien claimed to have been brought into the country in violation of Sections 4 and 5 thereof, *Held*, that Congress provided a tribunal for the recovery of the penalty sued for in "the courts of the United States," and further pro-

vided that "both the Circuit and District Courts should be invested with full and concurrent jurisdiction of all causes, civil and criminal, arising under any of the provisions of this Act" (Section 29). No restraint was placed upon the judgment of the courts by reason of the previous action of the administrative branch of the government. The question at issue between the alien and the government in that special inquiry was simply one of the alien's right to land.

5. A plea in estoppel does no more than deny the plaintiff's legal right to bring the action without denying or admitting the allegations of the complaint.

6. The plea in bar, so-called, in this case held to be a plea in estoppel, which is overruled and defendant given 5 days in which to plead further.

At Law.    { Action to recover penalty under Sections 4 and 5 of Act of March 3, 1903. (Vol. 32, Part 1. P. 1213, U. S. Stats.)

*Thayer & Hemenway* and *John Albert Matthewman*, for plaintiff.

*Smith & Lewis* and *Hartwell & Bigelow*, for defendant.

Estee, J.    This is an action at law brought by the plaintiff under the provisions of Sections 4 and 5 of an Act of Congress, dated March 3, 1903, entitled "An Act to regulate the immigration of aliens into the United States." (U. S. Statutes, 1902-3, page 1213).

The complaint alleges that—

"Continuously from November 1, 1902, or thereabouts, up to May 1, 1903, the defendant did knowingly encourage and solicit the migration and importation into the United States of America from a foreign country, to-wit: the empire of Korea, of one John Doe 1st, a foreigner and an alien, being a Korean . . . . . . . . . . to perform labor and service in the Territory of Hawaii; that in pursuance of and after such encouragement and solicitation, the defendant continuously, between March 3, 1903 and May 1, 1903, did knowingly assist the immigration and importation of said alien into the said United States of America from the Empire of Korea and on or about April 1, 1903, did

knowingly prepay or cause to be prepaid, the transportation of said alien between the countries aforesaid, and that in pursuance of such encouragement and solicitation, said alien did migrate, and on May 1, 1903, did enter said Territory of Hawaii; that after entering said Territory of Hawaii as aforesaid, said alien did perform labor and services therein."

The defendant interposed a plea in bar so-called duly verified by the oath of defendant, which is in words and figures following:

"The defendant says that on the 5th day of May, A. D. 1903, at Honolulu, in the Territory of Hawaii, a duly appointed Board of Special Inquiry appointed in conformity with the provisions of an Act of Congress approved March 3, 1903, entitled 'An Act to regulate the immigration of aliens into the United States,' was convened to consider amongst other cases, the case of the lawfulness of the immigration and importation to the United States of America, to wit: to Honolulu, in the Territory of Hawaii, from a foreign country, to-wit, the Empire of Korea, of one 'John Doe 1st', a foreigner and an alien, being a Korean, and being the same person mentioned as an alien in the plaintiff's complaint.

"That said Board then and there had full authority to determine whether the said alien should be allowed to land or be deported, and also whether said alien had been imported or brought or had come to the Territory of Hawaii in violation of law, and after taking testimony and examining the said case and considering the same, the said board decided on the sixth day of May, that the said alien should be allowed to land and should not be deported. And that said decision is now in full force and effect and is final and conclusive upon the question of the lawfulness of the alleged immigration and importation of the said alien to the United States, and this the defendant is ready to verify. And the defendant says that by force and effect of said decision and of the statute in such case made and provided, the plaintiff is precluded and barred from bringing this action, inasmuch as his right to recover herein depends upon the

unlawfulness of the immigration and importation as aforesaid of the said alien."

Said plea closing with a prayer for judgment that the said complaint be dismissed with costs.

To this, the plaintiff "waiving none of his objections to the legal insufficiency of the defendant's plea", replied as follows:

"Admits (a) that a board purporting to be a Board of Special Inquiry was convened on or about May 5th, 1903,..........to consider amongst other cases, the case of the importation and immigration of the John Doe 1st, referred to in both the complaint and plea in bar, and further (b) that said Board decided, on or about May 6th, 1903, that said alien should be allowed to land."

But denies every other allegation in the plea contained, concluding with "and of this the plaintiff puts himself upon the country."

Upon these pleadings, the case as to the plea in bar referred to, was heard upon consent without a jury. The defendant introduced both written and oral evidence to sustain his plea; the plaintiff put in no evidence, and the case was therefore submitted upon the evidence offered by the defendant alone and the questions of law raised thereon.

Congress has provided by a series of laws supplementary to Sections 2158-2164 inclusive of the Revised Statutes of the United States, a system, the intent of which is to keep from our shores an undesirable alien population. It was early found that some prohibitory measures were necessary to be adopted in this behalf, to prevent the country becoming flooded with alien immigrants suffering from mental, physical and moral ailments. In the earlier Acts of Congress, the proscribed classes were somewhat limited. The Act of March 3, 1875, (Vol. 18, Part 3, U. S. Statutes at Large P. 477) provided only for the exclusion of "persons who are undergoing a sentence for conviction in their own country of felonious crimes other than political or growing out of or the result of such political offenses, or whose sentence has been remitted on condition of their im-

migration, and women 'imported for the purposes of prostitution.' ".

The Act of August 3 1882, (Vol. 22 U. S. Statutes at Large, p. 214), went a little further and refused admission to "any lunatic, idiot or person unable to take care of himself or herself without becoming a public charge."

The Act of February 26, 1885 (Vol. 23, U. S. Statutes at Large, p. 332), was the original "Contract Labor" Act, prohibiting the importation and immigration of aliens under contract or agreement to perform labor in the United States, and providing a penalty for any person found guilty of violating any of the provisions of that Act by "knowingly assisting, encouraging or solicitating the migration or importation of any alien or aliens into the United States. . . . . . . . . . to perform labor or service of any kind under contract or agreement, express or implied, parole or special with such alien or aliens. . . . . . . . . . previous to becoming residents or citizens of the United States."

This law was amended by Act of Congress of February 23rd, 1887 (Vol. 24, U. S. Statutes at Large, p. 414), by adding thereto certain other provisions whereby the Secretary of the Treasury was given power to make rules and regulations for carrying out the provisions of the Act, and containing certain other provisions not necessary to be gone into.

The Act of October 19, 1888, (Vol. 25, U. S. Statutes at Large, p. 565), also in amendment of the Act of February 23, 1887, authorized the Secretary of the Treasury in case he shall be satisfied that an immigrant has been allowed to land contrary to the prohibition of the law, to cause such immigrant within the period of one year after landing or entry, to be taken into custody and returned to the country from whence he came.

The Act of March 3, 1891, (Vol. 26, U. S. Statutes at Large, p. 1084), adds to the list of prohibited classes "Paupers . . . . . . persons suffering from a loathsome or a dangerous contagious disease, persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude (other than political offenses) polygamists and also any person whose ticket or passage is paid for with the money of another

or who is assisted by others to come, unless it is affirmatively and satisfactorily shown on special inquiry that such person does not belong to one of the foregoing excluded classes, or to the class of contract laborers excluded by the Act of February 26, 1885."

It was in this Act of 1891 that the first reference to a "special inquiry" was made. It should be here noted as indicative of the strong and consistent feeling of Congress upon the question of contract labor so called, and the determined effort made to meet every phase of these immigration violations, that Section 3 of the Act of 1891, above referred to, provided that "it shall be deemed a violation thereof," to "assist or encourage the importation or immigration of any alien by promise of employment through advertisements printed and published in any foreign country; and any alien coming to this country in consequence of such advertisement shall be treated as coming under a contract as contemplated by such Act........" The same provisions are re-enacted in the Act of March 3, 1903, the penalty being the same imposed by Section 5 of the Act.

The next step taken by Congress in relation to immigration was the Act of March 3, 1893, (Vol. 27, U. S. Statutes at Large, p. 569), which amended the Act of 1891 in some details not relevant to the question under discussion in the case at bar, but which did not add to the proscribed aliens, but provided certain machinery to carry out the provisions of the Act in the nature of a Board of Special Inquiry (Section 5) in conformity to Section 1 of the Act of 1891, which Board was to be conducted by not less "than four officials acting as inspectors, to be designated in writing by the Secretary of the Treasury or the Superintendent of Immigration, for conducting special inquiries. This section provided that no immigrant should be admitted unless upon a favorable decision made "by at least three" of the said inspectors; any decision to admit, however, being subject to appeal by any dissenting inspector to the Superintendent of Immigration whose action was subject to review by the Secretary of the Treasury.

The Act of August 18, 1894, (Vol. 2, U. S. Supp. R. S. U. S., p. 253), provided in relation to the decision of the appropriate immigration or customs officers that such decision, "if adverse to the admission of the alien" should be final unless reversed on appeal to the Secretary of the Treasury.

The Acts of March 2, 1895, (Vol. 2, U. S. Supp. R. S. U. S., p. 415) and June 6, 1900, (Vol. 31, U. S. Statutes at Large, p. 611), respectively provided that the Superintendent of Immigration shall be designated Commissioner General of Immigration and shall be in charge of the Chinese Exclusion Laws and of the various Acts regulating immigration into the United States, its territories and the district of Columbia under the supervision and direction of the Secretary of the Treasury.

The Act of March 3, 1903, (Statutes of 1902-3, p. 1213-1222) upon which this action is based, not alone excludes by its provisions the classes mentioned in the preceding enumerated Acts of Congress, but goes even further in its effort to raise the standard of foreign immigration and to make stronger if possible, the restrictions imposed upon the admission of those undesirable alien immigrants who seek an entrance into the country. It provides by Section 1 thereof for the exclusion of "all idiots, insane persons, epileptics, and persons who have been insane within five years previous; persons who have had two or more attacks of insanity at any time previously; paupers, persons likely to become a public charge; professional beggars, persons afflicted with a loathsome or with a dangerous contagious disease, persons who have been convicted of a felony or other crime or misdemeanor involving moral turpitude; polygamists, anarchists, or persons who believe in or advocate the overthrow by force or violence of the government of the United States or of all government or of all forms of law, or the assassination of public officials; prostitutes, and persons who procure or attempt to bring in prostitutes or women for the purpose of prostitution; those who have been, within one year, from the date of the application for admission to the United States, deported as being under offers, solicitations, promises or agreements to perform labor or service of some kind therein; and also any person

whose ticket or passage is paid for with the money of another, or who is assisted by others to come, unless it is affirmatively and satisfactorily shown that such person does not belong to one of the foregoing excluded classes. . . . . . . . . . ."

Sections 4 and 5 of this Act contain provisions similar to the provisions of Sections 1 and 3 of the Act of February 26, 1885, (23 Stats. P. 332), sometimes called the "assisted immigration act", but a careful reading of these provisions will show a much more comprehensive treatment of the subject of assisted immigrants in the Act of March 3, 1903.

Section 4 provides: "It shall be unlawful for any person, company, partnership or corporation, in any manner whatsoever to prepay the transportation or in any way to assist or encourage the importation or immigration of any alien into the United States in pursuance of any offer, solicitation, promise or agreement, parole or special, express or implied, made previous to the importation of such alien to perform labor or service of any kind, skilled or unskilled in the United States."

And it is provided by Section 5 that any person, company, partnership or corporation violating the same "by knowingly assisting, encouraging or soliciting the migration or importation of any alien to the United States to perform labor or service of any kind by reason of any offer, solicitation, promise or agreement, express or implied, parole or special, to or with such alien, shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States or by any person who shall first bring his action therefor in his own name and for his own benefit, including any alien thus promised labor or service of any kind as aforesaid. . . . . . . . . . ."

I do not deem it necessary at this stage of the case, however, to enter into a construction of Sections 4 and 5 of this Act, save possibly as to the right of the plaintiff to institute this action, which I will recur to later.

Under the Act of March 3, 1893, Section 5 thereof, special inquiries are to be held relative to the case of any alien detained by an immigration inspector, who is not satisfied "clearly

and beyond a doubt" that the alien is entitled to admission; an appeal being allowed to the Superintendent of Immigration by any dissenting inspector from the Board's decision to admit, with a final review by the Secretary of the Treasury.

The Act of March 3, 1903, Section 25, also provides for the appointment of Special Boards of Inquiry; such appointments to be made by "the Commissioner of Immigration at the various ports of arrival as may be necessary for the prompt determination of all cases of aliens detained at such ports under the provisions of law."

The "detention" referred to is a detention doubtless arising under the provisions of Section 24 of said Act, which provides that "every alien who may not appear to the immigrant inspector at the port of arrival to be clearly and beyond a doubt entitled to land, shall be detained for examination in relation thereto by a Board of Special Inquiry"; which is practically the same provision as in the Act of March 3, 1893; but Section 25 of this last Act goes further and is more stringent than is the analagous provision of the Act of 1893, for it provides that although an alien may be permitted to land upon examination and favorable decision by an immigrant inspector, yet that such decision shall be "subject to challenge by any other immigration officer, and such challenge shall operate to take the alien whose right to land is so challenged, before a board of special inquiry for its investigation."

This Board of Special Inquiry shall "consist of three members" (Section 25) selected from such of the immigration officials in the service as the Commissioner General of Immigration with the approval of the Secretary of the Treasury, shall from time to time designate as qualified to serve on such boards. Under this Section, such Boards are given "authority to determine whether an alien shall be allowed to land or be deported."

The decision of this Board is declared by Section 10 of the Act to be "final as to the rejection of aliens afflicted with a loathsome or with a dangerous contagious disease, or with any mental or physical disability which would bring such alien with-

in any of the excluded classes", but which decision must "be based upon the certificate of the examining medical officers."

With the exception of these classes referred to, all other aliens whose right to land is denied by the Board of Special Inquiry, the decision of two members of which shall in the language of the Act "prevail and be final", have a right of appeal through the Commissioner of Immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of the Treasury, whose decision shall then be final. (Section 25.)

The right of appeal is also given to any dissenting member of the Board in the same manner, a right also secured under the Act of 1893.

I have gone very fully into a consideration of the provisions of the Acts of Congress in order to ascertain the intent of Congress generally in restraining certain classes of alien immigrants from coming into the United States, and especially that class of immigrants induced to come here under contract or promise of labor. I cannot express more clearly the motive for the original Act of February 26th, 1885, than was stated by Mr. Justice Brown, when, sitting as a District Judge, he decided the case of *United States v. Craig*, 28 Fed. P. 795, an action to recover a penalty under the provisions of that Act. He said—

"The motives and history of the Act are matters of common knowledge. It had become the practice for large capitalists of this country to contract with their agents abroad for the shipment of great numbers of an ignorant and servile class of foreign laborers under contracts by which the employer agreed, upon the one hand, to prepay their passage, while, upon the other, the laborers agreed to work after their arrival for a certain time at a low rate of wages. The effect of this was to break down the labor market and to reduce other laborers engaged in like occupations to the level of assisted immigrants. The evil finally became so flagrant that an appeal was made to Congress for the passage of the Act in question, the design of which was to discountenance the migration of those who had not sufficient

means in their own hands or those of their friends, to pay their passage."

*Church of the Holy Trinity v. U. S.*, 143 U. S., P. 457; *U. S. v. Gay*, 95 Fed. 226.

It seems to be clear, not alone that the intent of Congress was to exclude this as well as other classes of undesirable "alien immigrants", but that it designed to leave the final decision as to their "right to land" in the United States, to the discretion of the immigration officials, with a right of final appeal to the Secretary of the Treasury. Congress had plenary power to do this. *Nishimura Ekiu v. U. S.*, 142 U. S., 651, 660; *Hilton v. Merritt*, 110 U. S. 97; *Benson v. McMahan*, 127 U. S. 457; *In re Oteiaza*, 136 U. S. 330; *Lee Moon Sing v. U. S.*, 158 U. S. 538, 547; *Yamataya v. Fisher*, Vol. 23, Ad. Sheets, Am. L. R. No. 12, May 15, 1903.

Counsel for plaintiff contends that defendant failed to prove that the Board of Special Inquiry which considered the cases of the Koreans was a legal board, or constituted under conformity to the provisions of Section 25 of the Act of March 3, 1903. The legality of the organization of that Board is not a matter necessary to be passed upon by this Court in rendering a decision in a proceeding of this character.

It seems to be settled law that the power to admit or reject aliens claiming the right to land in United States territory lies in the administrative officers acting under the political powers of the Government, "except so far as the judicial department is authorized by treaty or by statute, or is required by the Constitution to intervene." *Fok Yung Wo v. U. S.*, 185 U. S. 296. Under the Act of March 3, 1903, this power has been granted by Congress to a special board of inquiry.

But while Congress has seen fit to give full powers to executive officers upon this question, not alone of admitting but of expelling aliens (Sections 21 and 35 Act of March 3, 1903), yet in the exercise of its powers "it may call in the aid of the judiciary to ascertain any contested facts on which an alien's right to be in the country may depend." *Lem Moon Sing v. United States*, 158 U. S. 538, 545.

Congress knowing of the strong efforts made to bring into the country this low grade immigration labor, and feeling that there had been and might be in the future many successful evasions of the vigilance of the immigration officers (*In re Lificri*, 52 Fed. 293) substantially provided by Section 5 of the Act of March 3, 1903, that every person in the United States should be constituted a committee of one to ascertain if the immigration laws had been violated in this respect, and as an inducement to due vigilance thereunder, provided that such person could bring an action in his own name "and for his own benefit" to recover from the person accused of violating the law the sum of one thousand dollars as a penalty for each and every such offense. Congress provided a tribunal for the recovery of such penalty "in the Courts of the United States" (Section 5 of the Act) and further prescribed that "both the Circuit and District Courts should be invested with full and concurrent jurisdiction of all causes civil and criminal arising under any of the provisions of this Act" (Section 29). No restraint is placed upon the judgment of the courts by reason of the previous action of the administrative branch of the government. The question at issue between the alien and the government in that special inquiry was simply one of the alien's right to land.

Under the analagous provisions of the Act of February 26th, 1885, as amended by the Act of March 3, 1891, (Section 13) both the Circuit and District Courts of the United States are given jurisdiction of "all causes civil and criminal arising under the provisions of this Act." Under those provisions the Circuit and District Courts of the various Districts of the United States have assumed jurisdiction in suits to recover these penalties for alleged violations of the law. See *U. S. v. Craig*, 28 Fed. Rep. 795; *U. S. v. Bornemann*, 41 Fed. Rep. 751; *U. S. v. Edgar*, 45 Fed. Rep. 44; *U. S. v. Gay*, 80 Fed. Rep. 254; *Id.* 95 Fed. Rep. 227; *Rosenberg v. Union Iron Works*, 109 Fed. Rep. 844; *U. S. v. McElroy*, 115 Fed. Rep. 252.

Under the Act of March 3, 1903, as under the former Act of February 26, 1885, the United States as well as any private individual may be a party in suits to recover this penalty; the

late law differing in this, that the private individual bringing the action may do so in his own name "and for his own benefit" thereby making a somewhat radical change from the Act of 1885.

So too, the Supreme Court of the United States in construing Section 13 of the Act of March 3, 1891, amendatory of the Act of February 26th, 1885, and identical with Section 29 of the present Act, says:

"Section 13, by which the Circuit and District Courts of the United States are 'invested with full and concurrent jurisdiction of all causes civil and criminal arising under any of the provisions of this Act', evidently refers to causes of judicial cognizance, already provided for, whether civil actions in the nature of debt for penalties under Sections 3 and 4 (of the Act of 1885) or indictments for misdemeanors under Sections 6, 8 and 10. Its intention was to invest concurrent jurisdiction of such causes in the Circuit and District Courts; and it is impossible to construe it as giving to the courts jurisdiction to determine matters which the Act has expressly committed to the final determination of executive officers." *Nishimura Ekiu v. U. S.,* 142 U. S. 651, 664.

I am of opinion that this Court has jurisdiction to hear actions arising under Sections 4 and 5 of the Act of March 3, 1903; and the decision of the Board of Special Inquiry giving to these Koreans the right to land, is not a bar to an action for a penalty for bringing them unlawfully into the United States brought under the said provisions of that Act. *U. S. ex rel Anderson v. Burke,* 99 Fed. 895, 900.

Counsel for plaintiff made the point that if this court should overrule the plea in bar of defendant, judgment should be at once entered against the defendant for the amount of the penalty sued for upon the ground that the plea in bar is a confession and avoidance under the rules of common law pleading; and that having had a full trial upon the facts presented by him under said plea, defendant cannot under the provisions of Section 1223 of the Civil Code of Hawaii, (Civil Laws of Hawaiian Islands, 1897) continued in force by the provisions of an Act of Con-

gress for the government of the Territory of Hawaii (U. S. Stats. Vol 31, p. 141) plead any further. Counsel contended further that this court is bound under the provisions of Section 914 of the Revised Statutes of the United States to conform to the practise, pleadings and forms and modes of proceedings of the courts of the Territory of Hawaii. Under the local practise, two forms of answer are provided by Section 1223 of the Civil Code of Hawaii: 1. "Admitting all the facts stated in the petition to be true and denying that they are sufficient in law to support the plaintiff's demand, which shall form an issue of law to be determined by the court; or, 2, Denying the truth of the facts stated in the petition, which shall form an issue of fact to be determined by the jury." And concluding "that after either of these answers there shall be no further pleading."

The first form of answer called for under this Section is practically a demurrer, and in fact Section 1229 of the Civil Laws of 1897 of Hawaii, provides that it shall be called a demurrer. It is admitted that no demurrer was filed in this case. The other answer called for "must deny the truth of the facts stated in the petition, which shall form an issue of fact to be determined by the jury." No such denial was interposed in this case by the so-called plea in bar.

The provisions of Section 914 of the Revised Statutes of the United States are not mandatory upon this Court; on the contrary, a discretion is left in the Court as to whether it will follow technically the forms, pleading and modes of procedure of the courts of the territory. Says the Supreme Court in the case of *Indianapolis & St. Louis Railroad v. Horst*, 93 U. S. 291, 300, 301.

"The conformity is required to be 'as near as may be'—not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such statutes which, in their judgment would unwisely encum-

ber the administration of the law, or tend to defeat the ends of justice in their tribunals."

And again, in the case of *Mexican Central Railway v. Pinckney*, 149 U. S. 194, 207, the Supreme Court further says:

"The words of this Section 'as near as may be' were intended to qualify what would otherwise have been a mandatory provision, and have the effect to leave the Federal courts some degree of discretion in conforming entirely to the state procedure. These words imply that in certain cases it would not be practicable, without injustice or inconvenience to conform literally to the entire practise prescribed for its own courts by a state in which Federal courts might be sitting."

*Association v. Barry*, 131 U. S. 100; *Nudd v. Burrows*, 91 U. S. 426; *Erstein v. Rothchild*, 22 Fed. 61, 64; *O'Connell v. Reed et al.*, 56 Fed. 531.

In any event, it may be doubted whether the plea interposed in this case was in conformity with the provisions of Section 1223 of the Civil Laws of Hawaii. I am not inclined, however, to hold with plaintiff that this is such a plea in bar as is considered at common law a confession and avoidance; but it is rather in the nature of a plea in estoppel which neither admits nor denies, but simply relies upon some matter which estops the plaintiff from pursuing his action.

"A special plea in bar alleging matter of estoppel neither confesses nor denies the truth of the declaration, though like other pleas in bar, it virtually denies the right of action by denying the plaintiff's right to allege the facts stated in the declaration." Section 70, Gould on Pleading, 4th Ed. Ch. VI Part 2, p. 317.

Says the same author, on Page 33 of the same work, Chapter 2, Section 39,—

"A plea to the action being an answer to the merits of the complaint, always goes in denial of the alleged right of action. And this the defendant may deny, 1, by denying in whole or in part, the allegations in the declaration; or 2, by alleging new matter which admits the truth of the plaintiff's allegations, but goes in avoidance of them; or 3, by pleading matter which

neither admitting nor denying any of the facts alleged by the plaintiff, denies his legal right to allege them."

It seems to the court that this plea in bar is a plea in estoppel which does no more than deny the plaintiff's "legal right" to bring this action by setting up as a bar thereto, the decision of the Special Board of Inquiry. No judgment will be entered in this case until all the facts are heard by the court on the merits. The plea in bar is therefore overruled with costs taxed against defendant; the defendant being further given five days' time in which to plead.