Kalman TANKO, James E. Archambault and Titus Haffa, co-partners, doing business as Plastic Precision Parts Company, a co-partnership,

v.

Henry G. SAPERSTEIN, doing business as H. G. Saperstein & Associates, California Whistle Co., a corporation, TV Whistle Co., a corporation, Police TV Whistle Co., a corporation, and Whistle Molds Co., a corporation.

No. 55 C 2250.

United States District Court
N. D. Illinois.

Jan. 24, 1957.

Henry Pollenz, Solomon B. Rosenzweig, Chicago, Ill., for plaintiffs.

Marshall Korshak, Samuel D. Rothman, Milton T. Raynor, Chicago, Ill., for defendants.

HOFFMAN, District Judge.

The defendants in this proceeding have filed their motion to quash a writ of attachment because the affidavit filed in support of the writ was acknowledged before a notary public whose commission had expired. The plaintiffs have filed a counter-motion for leave to file an amended affidavit.

The action, brought for the recovery of a sum allegedly due upon a contract, was originally commenced in the Superior Court of Cook County, Illinois. Since the defendants were citizens and residents of California, not subject to service of process in Illinois, the plaintiffs sought and obtained the issuance of a writ of attachment against their property. Under this writ the Kellogg Company was served as garnishee, and has filed its answer. The defendants then removed the action to this Court, relying upon diversity of citizenship.

In this Court the defendants seek to quash the writ of attachment upon the ground that the document filed by the plaintiffs to support the attachment is not an "affidavit" within the meaning of Section 2 of the Illinois Attachment Act, Ill.Rev.Stat. c. 11, § 2, which provides:

> "To entitle a creditor to such a writ of attachment, he or his agent or attorney shall make and file with the clerk of such court, an affidavit setting forth the nature and amount of the claim, so far as practicable, after allowing all just credits and set-offs, and any one or more of the causes mentioned in the preceding section, and also stating the place of residence of the defendants."

The proceedings are defective, it is claimed, because the purported affidavit was not subscribed and sworn to before a legally authorized notary public, but rather before a person whose notarial commission had expired some ten months before the execution of the ostensible affidavit.

The plaintiffs argue in response that this defect does not impair the validity of the attachment and, alternatively, that the defect may be cured without affecting the attachment by the filing of an affidavit executed with the requisite formality.

■ By removing the action to this Court the defendants have not waived any objections to the attachment or to the jurisdiction of the state court. See Clark v. Wells, 1906, 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138; Wabash Western Ry. v. Brow, 1896, 164 U.S. 271, 279, 17 S.Ct. 126, 41 L.Ed. 431; Employers Reinsurance Corp. v. Bryant, 1937, 299 U.S. 374, 57 S.Ct. 273, 81 L.Ed. 289.

Turning first to the plaintiffs' motion for leave to file an amended affidavit, and assuming for purposes of discussion that the affidavit filed is subject to attack, we encounter first the question whether Federal law or the law of Illinois is to control. The Federal statutes furnish no clear guide to the source of the governing rule. Section 1450 of the Judicial Code, 28 U.S.C. § 1450, suggests that state law applies; it provides in part:

"§ 1450. *Attachment or sequestration; securities*

"Whenever any action is removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant in such action in the State court shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court." 28 U.S.C. § 1450 (1948).

Rule 64 of the Federal Rules of Civil Procedure, 28 U.S.C. appears to qualify the implication that state law controls the question of amendment, and to contemplate that liberal federal amendment policies will be followed. That Rule states in part:

"Rule 64. Seizure of Person or Property

"At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any

of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. * * *"
See also Rule 81(c), Federal Rules of Civil Procedure.

Among the Rules referred to in these provisions is Rule 4(h), which authorizes amendment of "any process or proof of service thereof * * * unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

Similarly, Section 1448 of the Code indicates that amendment of the attachment process is to be governed by the rules applicable to the amendment of process in actions originally commenced in Federal courts. It provides:

"§ 1448. Process after removal

"In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448 (1948).

In the interpretation of a predecessor of this statute, the power to amend "process" has been read to encompass amending an affidavit in support of attachment or garnishment, even though amendment in a court of the state would be denied. Thus in Booth v. Denike, C.C.W.D.Tex.1894, 65 F. 43, Judge Maxey observed:

"'* * * In view of the decisions of the supreme court of this state, it is evident that a court of the state would be without authority to permit an amendment to an affidavit in a proceeding of this character. But it does not follow that in all cases the rule applied by the

local courts would be binding upon a federal court sitting within the state * * *". 65 F. at page 45.

"It seems clear that the last clause of section 954 [Rev.Stat. § 954] expressly confers upon the courts the power to permit parties to amend any defects in the process or pleadings in furtherance of justice. That such power includes also the authority to permit amendments in garnishment proceedings, appears equally evident, and I think it cannot be doubted that the legislation of congress is exclusive of the local laws on that subject. * * *". 65 F. at pages 47–48.

A similar conclusion was reached by Mr. Justice Matthews, sitting as Circuit Justice, in Erstein v. Rothschild, C.C.E.D.Mich.1884, 22 F. 61. There the plaintiff's affidavit required for the issuance of an attachment had omitted to state the nature of the plaintiff's claim, as prescribed by Michigan law. The plaintiff sought to amend his affidavit to remedy the omission, and amendment was allowed despite the fact that Michigan courts would have denied it. In the course of the opinion, holding that Federal law controlled, the Court stated:

"* * * It is not a sufficient reason that the courts of Michigan do not so apply a similar statutory provision for amendments, because the reasons on which these courts proceed do not apply to attachment suits in the courts of the United States * * *". 22 F. at page 66.

More recent decisions have continued to apply Federal law to determine the propriety of amending affidavits in attachment, concluding that neither the promulgation of the Federal Rules of Civil Procedure in 1938 nor the revision of the Judicial Code in 1948 compels a different result. In Robert W. Irwin Co. v. Sterling, Inc., D.C.W.D.Mich.1953, 14 F.R.D. 250, the affidavit supporting garnishment upon a counterclaim failed to aver that the affiant was an agent or attorney of the claimant, an allegation required by Michigan law. The Court found that the affidavit as filed was "fatally defective as failing to comply with the statutory requirements." 14 F.R.D. at page 254. But the Court allowed amendment of the affidavit, and denied the motion to quash, by applying Federal law. On this question the opinion states:

"I now turn to the defendants' motions to amend their original affidavits in garnishment so as to state that the affiant officers were the agents of their respective companies. Rule 64 of the Federal Rules of Civil Procedure makes the Michigan statutory remedy of garnishment available in the present action, 14 Cyclopedia of Federal Procedure, 3d Ed., §§ 71.36, 71.39, and under Rule 81(c), as amended, the Federal rules shall apply and govern all procedure in the case after its removal to this court. It is therefore clear that the question as to the defendants' right to amend their respective affidavits in garnishment shall be determined under the Federal rules and the established Federal law * * *". 14 F.R.D. at page 254.

Professor Moore in his treatise reviews and summarizes these authorities, and agrees with them that Federal law controls. He states:

"* * * On the other hand, while state law, under Rule 64, determines the sufficiency of affidavits in attachment and garnishment proceedings, federal law determined the right to amend the affidavits prior to the Federal Rules; this rule still continues so that the court, in its discretion, may permit them to be amended; and when the amendment relates only to formal matters the amendment will relate back to the date the affidavits were filed." 7 Moore, Federal Practice 1525, § 64.07[2] (2d ed. 1955)

■ If, as these authorities hold, the question of amendment is governed by Federal law, the plaintiffs' motion for leave to file an amended affidavit would be granted. The affidavits filed in support of the requested amendment indicate that the person who purported to act as a notary public in taking the acknowledgment was a member of the Illinois bar and had held a valid notarial commission until its regular expiration some ten months before the execution of the affidavit. Neither the ostensible notary nor the affiant, according to their sworn statements, was aware of the expiration. Nothing presented to the court suggests that the proceeding would have been different in any respect if the notarial commission had not lapsed. There is not the slightest intimation that the purported affidavit is not true and correct. The defect of the affidavit is purely a matter of form; the defendants have not been harmed by the oversight. In these circumstances, the court cannot conclude that "it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued" if the affidavit were amended, as required by Rule 4(h), Federal Rules of Civil Procedure. In the exercise of the discretion conferred by this rule, if Rules 64(2) and 81(c) render it applicable, and under Section 1448 of the Judicial Code, set out above, the plaintiffs' motion for leave to amend the affidavit would be granted, and the defendants' motion to quash would be denied.

There is reason for holding, however, that state law should control the question of amendment in a proceeding of this character. The cases considered above which applied Federal law upon the question were all unlike this action in one important respect. In all, the defendants had been personally served with process, and the attachment or garnishment involved was no more than a provisional remedy sought in a case already properly before the court. Here, however, the defendants have not been served with process, and they are subjected to the power of the court only by virtue and to the extent, of their property within the jurisdiction of the court. Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565. The validity of the attachment accordingly cuts deeper than depriving the defendants of the use of property during the pendency of the suit. It goes to the power of the court to act at all. The difference was described in Erstein v. Rothschild, C.C. E.D.Mich.1884, 22 F. 61, as follows:

"* * * The attachment proceeding, therefore, in the courts of the United States has altogether a different character from that proceeding *in rem* in common use in the states, the object of which is either to enforce the appearance of the absent defendant or to subject his property to the payment of his debts. In the federal courts [in original actions] there must be jurisdiction over the person of the defendant and of a subject-matter, independent of the proceeding in attachment, and without which no attachment can be effectual. Everything pertaining to the attachment, therefore, arises and occurs in the course and progress of a pending suit, and is a mere matter of procedure in the exercise of a jurisdiction otherwise acquired. Any irregularity, omission, or defect, therefore, in that proceeding is mere error, and does not and cannot affect the jurisdiction of the court; for that is acquired over his person by process served upon the defendant, and over his property attached by the actual seizure under the writ of attachment." 22 F. at page 65.

■ The procedures employed by the plaintiffs in commencing this action in the State court would not have been available had the action been brought originally in a Federal court. To commence a federal action, seizure of property, garnishment of claims, or other *in rem* procedures are not enough. Attachment is only an incident of the suit, and not a means of obtaining juris-

diction. Big Vein Coal Co. of West Virginia v. Read, 1913, 229 U.S. 31, 33 S.Ct. 694, 57 L.Ed. 1053; Toland v. Sprague, 1838, 12 Pet. 300, 37 U.S. 300, 9 L.Ed. 1093. The promulgation of Rule 64 of the Federal Rules of Civil Procedure did not affect this principle. Davis v. Ensign-Bickford Co., 8 Cir., 1944, 139 F.2d 624. 7 Moore, Federal Practice 1535, § 6409[1], [2] (2d ed. 1955). But since a state court proceeding based upon attachment without personal jurisdiction may result in a judgment valid to the extent of the property attached, the defendant is put in jeopardy by the state court proceeding. To protect his right of access to Federal court, the defendant is accorded the privilege of removing the action even though it could not have been commenced in a court of the United States. Clark v. Wells, 1906, 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138. But if the proceedings in the state court did not suffice to commence a valid proceeding, a new attachment cannot issue after removal, since that would amount to commencing an original action in the Federal court without obtaining personal jurisdiction of the defendant. See Rosenthal v. Frankfort Distillers Corp., 5 Cir., 1951, 193 F.2d 137; Westerman v. Gilbert, D.C.D.R.I.1953, 119 F.Supp. 355.

The principle is illustrated by Hisel v. Chrysler Corp., D.C.W.D.Mo.1950, 90 F.Supp. 655. There the plaintiff had commenced an equity suit in the state court by means of a writ of attachment, without personal jurisdiction of the defendant. Under Missouri law, attachment would not issue in an equity proceeding. The defendant removed the action to Federal court, and there moved to quash the garnishment in aid of the attachment. The plaintiff, however, filed an amended complaint, stating a claim at law sufficient to support the attachment. The court nevertheless quashed the writ, observing:

> "As a consequence of the foregoing, we will not further consider plaintiff's attempt to confer jurisdiction in this Court over the person of the defendant Chrysler Corporation by the mere filing of an amended complaint after removal herein was perfected. First, for the reason that no process has been issued to Chrysler Corporation, giving us *personam* jurisdiction over it; and, second, the filing of an amended complaint which might have sustained the issuance of a writ of attachment in the state court if a new affidavit in attachment were properly executed would be equivalent to the beginning of an action by issuance and levy of an order of attachment in this Court without personal service on defendant." 90 F.Supp. at page 658.

On the other hand, if the attachment proceedings completed in the state court do not fully comply with state law at the time of removal, the attachment may be perfected in the Federal court. Clark v. Wells, 1906, 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138; Davis v. Ensign-Bickford Co., 8 Cir., 1944, 139 F.2d 624. Any other rule would leave the plaintiff prejudiced by virtue of the removal. Cf. Rorick v. Devon Syndicate, 1939, 307 U.S. 299, 59 S.Ct. 877, 83 L.Ed. 1303.

The principle that emerges from these decisions is that attachment proceedings may not be commenced anew in the Federal court after removal, but that an imperfect attachment can be validated in Federal court. In determining what constitutes the prohibited issuance of new attachment process, on the one hand, and what amounts merely to permissive perfection of the attachment, on the other, state law should furnish the guides.

The application of state law to the question of amendment was considered in Cleveland & Western Coal Co. v. J. H. Hillman & Sons Co., D.C.N.D.Ohio 1917, 245 F. 200, 202, and the court concluded that state law controlled. In

the course of its opinion, the court said:

> "The exact question then is: What power exists in this court, after removal, to perfect jurisdiction of an action begun in a state court by attachment only, and in which personal service was or cannot be had? This exact question, so far as I can discover, has never been considered or decided. It is undoubtedly true that publication may be completed, and that process may be issued and personally served after removal. In Clark v. Wells, supra, [203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138] the action had been begun in the state court, an order of attachment issued and served, but no personal service was had either before or after removal. It was held that the order of publication provided for by the state law might be completed after removal, and a final judgment rendered, subjecting the property so attached to the plaintiff's demand.

> \* \* \* \* \* \*

> "On principle, it seems to me, if sufficient action had been taken in the state court before removal, so that, despite an order discharging an attachment after removal, plaintiff would still be in the situation of having an action pending, this court has power to perfect its jurisdiction by taking such further steps as are warranted under the state law. If, for instance, an attachment were discharged here merely because of some defect in the manner of levying the attachment, or even because of some defect or irregular action of the clerk in issuing the same, then it seems to me the jurisdiction of this court might be perfected. If this were not so, the anomalous condition would be produced of permitting the party removing the cause to come here with all the rights and remedies accorded to him by the state law, while the other party would be brought here denied of some of those rights and remedies. The net result would be that the defendant defeats the plaintiff's action by removing it. If, on the other hand, the attachment were discharged here because no sufficient affidavit had been filed in the state court authorizing the issue of an attachment, and the pendency of the action both here and in the state court depended on nothing else than the attachment proceedings, then a discharge of the attachment would leave no valid proceedings, properly begun, but not completed, upon which to base further steps to perfect the jurisdiction of this court." 245 F. at pages 202–203.

The court proceeded to consider the state authorities, and upon finding that the Ohio Supreme Court had held an attachment issued upon an insufficient affidavit to be "absolutely void", dismissed the action.

█ In the application of state law, the question posed is not whether the state court would characterize the remainder of the proceedings after discharge of an attachment as a pending action in some abstract sense. The appropriate question seems rather to be simply whether the action would have been dismissed had it remained in the state court, so that a new attachment would issue in a new proceeding. If the defect in the attachment proceedings would have warranted dismissal if there had been no removal, the defendants can claim no jeopardy to support litigation in a Federal court, and the Federal policy against *in rem* proceedings without personal jurisdiction requires dismissal. To allow amendment in such a case would amount to commencement of an action without personal jurisdiction. Conversely, if the attachment could have been validated if the action had remained in the state court, fairness to the plaintiff demands that amendment should not be denied by virtue of removal to a Federal court.

Turning, then, to a consideration of Illinois law concerning the propriety of the plaintiffs' motion for leave to amend the affidavit by acknowledgment before a duly authorized notary public, there is no authority directly in point. We begin with Section 28 of Chapter 11 of the Illinois Revised Statutes, which provides:

"No writ of attachment shall be quashed, nor the property taken thereon restored, nor any garnishee discharged, nor any bond by him given canceled, nor any rule entered against the sheriff discharged, on account of any insufficiency of the original affidavit, writ of attachment or attachment bond, if the plaintiff, or some credible person for him, shall cause a legal and sufficient affidavit or attachment bond to be filed, or the writ to be amended, in such time and manner as the court shall direct; and in that event the cause shall proceed as if such proceedings had originally been sufficient."

If this provision is to be read literally, it confers an undoubted power upon an Illinois court to permit the filing of a properly acknowledged affidavit in a case such as this. The decisions of the Illinois courts do not suggest any limitation applicable here, or that the statute means anything other than the plain import of its words.

In Booth v. Rees, 1861, 26 Ill. 45, 46, the affidavit in attachment was attacked upon the ground that it was made upon information and belief and did not contain positive allegations of fact. The court held the attachment thereunder to be defective but not void. The opinion lays down the controlling principles as follows:

"* * * It appears to be a rule of universal application that a void thing is not amendable. It has no vitality, and is deemed to have no legal existence. It is a nullity, and hence is incapable of amendment. On the other hand, a proceeding which is not in all respects formal, but has substance, may usually be amended as to form, or where the statute has authorized the amendment of the proceeding, it cannot be regarded as void, but only voidable.

"Where the statute has provided that affidavits in attachment proceedings might be amended, although informal, and not in conformity with its requirements, a sufficient amount of vitality was thereby imparted to such instruments as to render them voidable only, and not absolutely void. Defects which, independent of the statute, might have rendered such instruments a nullity, have been so far aided by this statutory right to amend as to render them only voidable. The sixth section of the attachment act is broad and comprehensive in its provisions. It provides for the allowance of any amendment to the affidavit, writ, return or bond, or that a new affidavit or bond may be filed, which may be necessary to obviate objections to the same. Under this provision, amendments are allowed to a great extent, and to that extent the proceeding is not void. An affidavit might be so defective, that it could not be regarded as amendable, and would consequently be void. If it in no way referred to the parties, or failed to fix any amount of indebtedness, and failed to state any grounds for suing out the writ of attachment, it could not be regarded as an affidavit in the case, and would not be amendable. But where it contains the names of the parties, the amount of the indebtedness, and specifies any of the statutory grounds for issuing the writ, however defectively stated, or if it shall contain some of the statutory requirements and omits others, it may be amended." 26 Ill. at pages 49–50.

■  It follows that the affidavit here filed, sufficient in other respects, is not

rendered "void" by the expiration of the acknowledging notary's commission; though it may be "voidable", it may be amended or a new affidavit filed without affecting the validity of the original attachment or requiring that the action be commenced anew.

In Campbell v. Whetstone, 1842, 3 Scam. 361, 4 Ill. 361, the affidavit had been acknowledged by a justice of the peace and not, as required by statute, by the clerk of the court. The Circuit Court dismissed the writ. Upon appeal, the Supreme Court reversed, holding it reversible error for the court to dismiss the writ in the face of the plaintiff's motion for leave to file a new and sufficient affidavit. See also Ray v. Keith, 1st Dist. 1907, 134 Ill.App. 119, affirmed 1908, 231 Ill. 213, 83 N.E. 152.

To the same effect is Kruse v. Wilson, 1875, 79 Ill. 233. There the signature of the officer who administered the oath for the affidavit had been omitted. The Court held the attachment was not rendered void by this defect, and that the trial court would have erred to deny an amendment of the affidavit had a motion for that purpose been presented to it. In Moore v. Mauck, 1875, 79 Ill. 391, the affidavit filed in support of the attachment failed to comply with the statute in several respects. The nature of the claim was not disclosed, the residence of the debtor—or the claimant's ignorance of his residence—was not alleged, and the recital that the claimant believed himself entitled to the amount claimed, after all just credits and set-offs, was omitted. Nevertheless the Court held the attachment good against a collateral attack; it was not void since the affidavit was amendable to cure these defects. However, in Martin v. Schillo, 1945, 389 Ill. 607, 60 N.E.2d 392, the affidavit stated no specific ground for attachment, but rather consisted of a recital of all the grounds available under the Illinois statute, stated· in the disjunctive. The Court held the affidavit,

and the attachment issued upon it, void. No motion for leave to amend was presented or discussed, and there is nothing in the opinion to suggest that earlier decisions relating to defects of other kinds were to be overruled. Indeed, they were cited with approval. Here the plaintiffs' affidavit contains unequivocal allegations of the defendants' nonresidence as the ground of attachment, and the case is therefore distinguishable. Rabbitt v. Frank C. Weber & Co., 1921, 297 Ill. 491, 130 N.E. 787 is not controlling for the same reason. There the attachment proceeding was held bad for lack of notice, and in addition, upon the ground that the affidavit in attachment wholly failed to state any of the statutory grounds for attachment and contained no allegation whatever regarding the defendants' residences.

The defendants rely upon decisions of the courts of other states, but since I am obliged to follow the law of Illinois, it is unnecessary to consider them. In view of the breath of Section 28, Chapter 11, Illinois Revised Statutes, and in view of the opinions construing it which hold that defects in the acknowledgment of the affidavit render the attachment only voidable and amendable, I am persuaded that the Illinois courts would permit the plaintiffs here to amend or to file a new affidavit.

▮ In view of this conclusion that state law controls to allow the amendment, and in view of the previous conclusion that federal law, if controlling, would also permit amendment, it is unnecessary to consider the applicability of the principles of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to the question. The plaintiffs' motion is accordingly granted.

The granting of plaintiffs' motion leaves the defendants' motion to quash the attachment without grounds to support it. That motion is therefore denied.