CITY COMMISSION OF GALLIPOLIS v STATE ex HOUCK, et

Ohio Appeals, 4th Dist, Gallia Co
Decided July 14, 1930

R. M. Switzer, Gallipolis, for Commission.
Henry W. Charrington and Hollis C. Johnston, both of Gallipolis, for State ex.

**MAUCK, J.**

The first phase of the answer involves the interpretation of **123 GC** as amended April 6, 1929, **113 O. L. 56.** This section now provides that a notarial seal shall contain the name of the notary public with this proviso:

"Provided, that the name of the notary public may, instead of appearing on the seal, be printed, typewritten or stamped in legible printed letters near the signature of such notary on each and every document by him signed."

The principal requirement of this statute is that the notary public shall have a seal of the kind described. The effect of the proviso is that he need not have such seal if his name is stamped or printed on the document in a legible manner. Manifestly if the seal itself is not required to give effect to the official act of the notary the requirements of the provisio are not essential. That the absence of a seal does not vitiate an affidavit is well settled in Ohio. **1 Ohio Jur. 598.** The facts pleaded in this behalf, therefore, constituted no defense.

The second phase of the answer is that the notary public who administered the oath to the circulators of the petition was an attorney of the parties seeking the referendum and that this relationship renders the affidavit on the petition void.. This view is sustained by **Conroy Brothers v. Duggan & Brother, 17 O. A. 429.** An opposing holding is found in the opinion of another Court of Appeals in **Cleveland Building, Supply & Brick Co. v. Schwartz, 29 O. L. R. 450.** As this case must eventuate in a conflict with one or the other of the opinions mentioned a re-examination of the question is justified. There is, of course, nothing pertinent in the character itself save the simple requirement that to the petition there shall be attached an affidavit by the circulator thereof. Is an affidavit otherwise perfect rendered void by reason of the fact that the notary public administering the same is at the time the attorney of those interested in promoting the petition?

By virtue of **126 GC** all notary publics are given plenary power to administer such oaths as are required by law. This section, with varying language, has been part of the statute law since 1834 when the General Assembly conferred upon notaries public the power "to take affidavits and administer oaths for that purpose". **Swan's Statutes (1841) p. 601.** No statutory definition was provided for the word affidavit. None was needed. The lexicographers united in defining it as a statement in writing under oath. Since 1834 then a notary public has been authorized to administer the oath to an affidavit and this power has been plenary except so far as it has been limited by statutes subsequently passed. Two such limitations have been imposed by the legislature. One in 1850, **Swan's Statutes (1854) p. 577,** now in varied form **Section 121 GC,** prohibits bank officers and employes from officiating as notaries in a transaction in which the bank is concerned. The other is the limitations found in the Code of Civil Procedure passed in 1853, **Swan's Statutes (1854) p. 619 et seq.,** now relied upon by those who contend that any attorney acting as notary is incapable of administering the oath of any client to any affidavit of any kind. This familiar act was not designed to alter substantive law or to affect instruments requiring an affidavit but as its title imports was "An act to establish a code of civil procedure". The third chapter of that act was entitled "Modes of taking the testimony of witnesses". **Section 332 and 333** of that chapter were in these words:

"Sec. 332. The testimony of witnesses is taken in three modes:

1. By affidavit.

2. By deposition.

3. By oral examination.

Sec. 333. An affidavit is a written declaration under oath, made without notice to the adverse party."

These sections are now embraced in almost identical language in **Sections 11521** and **11522 GC. Section 337** of that chapter, **Section 11524 GC.,** provided that affidavits may be made before any person authorized to take depositions and authenticated in the same way, and **Section 340** of that code, now **11529 GC.,** conferred the power to administer oaths to such affidavits, **Section 242** of the same code, now **11532 GC,** read:

"The officer before whom depositions are taken must not be a relative or attorney of either party or otherwise interested in the event of the action or proceeding."

The history of **Sections 11521, 11522, 11524, 11529** and **11532 GC,** therefore show that their express purpose was only to define and regulate the taking of affidavits to be used as testimony in a judicial proceeding and the explicit language of the sections mentioned is in harmony with that purpose. **Section 11522** defines this sort of affidavit, i. e. one used as testimony, to be a written declaration under oath without notice to the **adverse party.** The inhibition against the notary or other official administering the oath found in **Section 11532** is that he must not be a relative or attorney of **either party.** There are, of course, multitudes of instances in which affidavits are required by law which are not taken to be used as testimony in judicial proceedings. The statute on perjury recognizes this, **Section 12842 GC.** In all such cases the power of the notary to administer the oath proceeds from **Section 126 GC,** and not from **Sections 11524** and **11529 GC,** which latter confers the special power and limits its exercise so far as affidavits employed in litigation are concerned. Upon the notary's power to administer oaths to all affidavits not to be used in litigation there is no disqualification save that in **Section 126.** In an affidavit to a chattel mortgage, mechanic's lien, referendum petition or like documents a notary may administer the oath notwithstanding he may be related to or the attorney of the affiant. The fact that the affidavits to the petitions for this referendum were sworn to before a notary who was attorney for the affiants and others interested in promoting the referendum did not vitiate those affidavits, and the averments of the answer to that effect constituted no defense.

A third question raised by the answer is whether the fact that the signatures to the petition were obtained in violation of one of the provisions of the charter renders void the signatures so obtained. This court has heretofore expressed the view that the conditions precedent to a referendum are mandatory and must be fully performed by those who would thus block the usual legislative processes. **Ohio Valley Electric Railway Co. v. Haggerty, 14 O. A. 398.** Sections 64 and following of the charter of Gallipolis prescribe the conditions for filing a petition, including the percentage of

electors required, the way in which the petitioner shall sign, the substance of what the petition shall contain, how the signature of the petitioners shall be attested and when the petition shall be filed. These seem to be the conditions precedent to the referendum and except as otherwise touched upon in this opinion were fully complied with by those who sought the referendum. The charter, however, contains other provisions defining and penalizing offenses relating to referendum petitions. These provisions are found in **Section 76** which reads as follows:

"No person shall falsely impersonate another or purposely write his name or residence falsely in the signing of any petition for initiative, referendum, or forge any name thereto, or sign any such paper with knowledge that he is not a qualified elector of the city. Nor shall any person employ or pay another or accept employment or payment, for circulating any initiative or referendum petition upon the basis of the number of signatures procured thereto. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor and shall, upon a conviction, be fined in any sum not exceeding one hundred dollars and the costs of prosecution. The foregoing provision shall not be held to be exclusive of, but in addition to, all laws of the State of Ohio prescribing penalties for the same offenses or for other offenses relating to the same matter."

An identical provision is found in the charter of the city of Columbus and a similar one in the Sandusky charter. Neither have been judicially construed.

The demurrer to the answer admits that enough of the signatures to the petition now in question were obtained by persons paid to circulate such petitions on the basis condemned by the provision quoted so that if such signatures can not be counted the referendum is not demanded by sufficient petitioners. It follows, therefore, that if these petitions are so tainted by this fact as to require their total rejection the answer is good and the demurrer should have been overruled.

It was competent, of course, for the framers of the charter to have provided among other conditions precedent to a referendum that no signatures should be counted that were obtained by one paid to secure signatures upon the basis of the number of signatures so procured. For reasons satisfactory to it the charter commission did not so provide. It perhaps felt that electors should not be deprived of an opportunity to vote upon a public matter notwithstanding their signatures had been solicited by circulators unlawfully employed, and that the public interest would be fully served by the punishment or the threat of punishment of those who employed or accepted employment in violation of the charter provisions. We deem it sufficient to say, when asked to deprive electors of the right of a

referendum because interested parties unlawfully employed circulators of petitions, that to do so requires us to read into the charter an effect not written therein by those who drew it.

Another question raised by the answer is that the committee representing the petitioners were not themselves subscribers to the petition. No reason is pointed out why they should have been. The contention is without merit.

The demurrer to the answer was properly sustained and the judgment is affirmed.

Middleton, PJ, and Blosser, J, concur.