**BERNARD LUMBER CO v MOLINARO** et

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 9, 1934

Paul McCracken, Youngstown, for plaintiff in error.

V. A. Virgallito, H. W. Pennock, Youngstown, B. J. Vennetti, Youngstown, and Barnum, Hammond, Stephens & Hoyt, Youngstown, for defendants in error.

## OPINION

By ROBERTS, J.

We are not interested in the first cause of action, but only the second, the attempted foreclosure of a mechanic's lien. There are three propositions involved in a determination of the rights of the parties growing out of this cause of action. First it is claimed on behalf of the defendants, the Molinaros, that there never was a valid mechanic's lien upon this property, for the reason that the affidavit by which the lien was attempted to be perfected was fatally defective in having been sworn to by Ben W. Bernard, who was an officer of the plaintiff company, before Anna Bernard, his sister, whom the evidence shows was a clerk in the office of this Lumber Company. She was not an officer of the company; neither was she a stockholder. She was merely an employe, but also was a notary public, and this affidavit was sworn to before her, and it is claimed that under the law she was not a competent person to administer the oath in this matter, and taking these claims or issues up in this order, discussion will be had upon this first proposition; that is, the alleged effectiveness of the mechanic's lien.

There is a line of cases in this state holding that a notary public who is interested as a relative or attorney is not a competent person to administer an oath, on occasions particularly where the affidavit taken is evidential in its nature; that is, where it is intended to be used in a judicial proceeding, but it is claimed that this objection does not exist when the affidavit is simply to fulfill the statutory requirement such as the verifying of an affidavit for a mechanic's lien and other instances of like character.

Sec 8314, GC, provides, and this is referring to the affidavit for mechanics' lien:

"Such affidavit may be verified before any person authorized to administer oaths, whether attorney for the owner, lien claimant or other party interested or not."

This is quite a broad declaration and by its terms would tend to lead to the belief that it authorized the affidavit in this case. In the case of **City Commission of City of Gallipolis v The State ex, 36 Oh Ap, 259, (8 Abs 541)**, the second paragraph of the syllabus reads:

"All affidavits except those used in judicial proceedings may be made before a notary public, notwithstanding such notary may be the attorney of the affiant."

Following the syllabus is quite an interesting opinion by Judge Mauck, in which he says, referring to §332:

"The testimony of witness is taken in three modes:

1. By affidavit.

2. By deposition.

3. By oral examination."

The following section provides:

"An affidavit is a written declaration under oath, made without notice to the adverse party."

The opinion is quite interesting and follows the development of this question to the availability under certain circumstances of affidavit taken before a relative or interested party, and concludes:

"See 12842, GC. In all such cases the power of the notary to administer the oath proceeds from §126, GC, and not from §§11524 and 11529, GC, which latter confers the special power and limits its exercise so far as affidavits employed in litigation are concerned. Upon the notary's power to administer oaths to all affidavits not to be used in litigation there is no disqualification save that in §126 GC. In an affidavit to a chattel mortgage, mechanic's lien, referendum petition, or like documents, a notary may administer the oath notwithstanding he may be related to or the attorney of the affiant. The fact that the affidavits to the petitions for this referendum were sworn to before a notary who was attorney for the affiants and others interested in promoting the referendum did not vitiate those affidavits, and the averments of the answer to that effect constituted no defense."

In the case of *Evans et v Lawyer*, 123 Oh St, 62, it is said:

"Since §8314, GC, authorizes a lien claimant to make affidavit for a lien before his attorney, the statement under oath made out and given to the owner by the original contractor on a building, pursuant to §8312, GC, showing the names of laborers, subcontractors, materialmen; furnishing labor or materials and the amounts still due therefor, is not invalid because the officer administering such oath is or becomes the attorney for the affiant in litigation which ensues."

On page 66 of the opinion, Judge Day said:

"The sections of the Code referred to relate to the mode of taking testimony, and are found under Part Third, Title IV, Division III, relating to procedure in Common Pleas Court, in Chapter 3 in regard to evidence. We think these sections of the Code relate to affidavits to be used in the sense of evidence."

These authorities and the construction of the sections themselves would seem to indicate quite clearly the line of demarcation between affidavits of an evidential nature and those designed for other purposes, as in this instance, the verifying of a mechanic's lien, and the objection to affidavits to be used in litigation does not exist in the instant case, and this court reaches the conclusion that the affidavit is not defective for this reason. This case, it may be suggested, was determined in the Court of Common Pleas upon that proposition.

The next proposition urged is that it appears in the trial of the case that notwithstanding Alex Rossi was the person who entered into the contract with Molinaro, the owner of the real estate upon which the building was constructed so far as the oral negotiations were concerned in any event, and who was also the man who went to the Bernard Lumber Company and arranged for the furnishing of the materials for which a lien is sought in this case, the written contract between the Molinaros, the owners of the property, and the contractor, for the erection of the building, was in the name of the wife of Alex Rossi. It is sufficient to say, so far as this is concerned, that we do not think that this was a fatal defect in this case so far as the right of recovery is concerned, if otherwise proper. What Rossi's motive may have been in the taking of this contract in the name of his wife, it harmed no one. The parties knew about it, sought to take no advantage concerning it, and we do not think that that would prevent the validity of a mechanic's lien otherwise good.

Then the third proposition urged against this lien is that it was not filed within sixty days prior to the completion of the furnishing of material. The contract was entered into on October 15, 1929. The first material was furnished on the 21st of October, 1929, and continued for some time after that. The last item of material which the Lumber Company delivered to the job was under date of April 17th, 1930, and this item consisted of one garage door, 4x7 feet, 6 inches, and glazed. There is no dispute upon this proposition that unless this item can be recognized as material furnished under the contract and as a part of the material properly used in the construction of these buildings, the lien must fail because it was not filed within sixty days of any item except this one of the garage door. The contract between Rossi and the Lumber Company was quite vague. Rossi seems to have gone to the Lumber Company and had a talk with Mr. Bernard

to the effect that he proposed to erect this building for the Molinaros, stated to him somewhat the nature and size of the building, and a rough general estimate was made that the material would cost about $2,200.00, and the material was to be furnished as ordered by Rossi, the contractor. Among the early items which were furnished by the Lumber Company and upon this lot were four doors identical with the one in question; that is four feet wide, seven feet, six inches high, and glazed, which were evidently used in the construction of a two-car garage upon these premises, which is ordinarily the first building constructed, presumably that shelter may be had for the other material, tools and so forth.

It is in evidence, and not disputed, that one of the doors originally furnished was not defective when delivered, or when placed in the building or attached to the frame of the building, but that after the premises were in the occupancy of the Molinaros the garage doors were left open and a severe wind wrecked one of these doors. Then Molinaro asked Rossi to get another door. Rossi simply ordered of the Bernard Lumber Company this door, and it was delivered. It seems to be clear that this door was not in the contemplation of the parties when the contract was entered into. There was no use or need for more than the four half-doors, which constituted two double doors for a double garage, where two cars or motor vehicles might be stored. That number of doors were furnished. There was nothing defective about them which would require their replacement. Rossi was not at fault in the installing of these doors, or the Lumber Company in furnishing them. It might be remarked that so far as the furnishing of these doors is concerned, at the price of $9.00, that it is not denied or questioned that the Lumber Company is entitled to a lien for that. It was furnished within sixty days of the affidavit. As has been said, the contract between the parties was extremely vague. The Molinaros moved into the house on the 29th of March, and Molinaro, his daughter and several other persons who testified in this court, orally, say that this was the date on which the Molinaros commenced the occupancy of this dwelling, and they unite in saying that no material was furnished under this contract after they moved in, which would tend to indicate that no other material except this door was furnished within the required period for the filing of a mechanic's lien.

It is somewhat of a doubtful proposition as to whether a garage was originally discussed in the contract or act. Ordinarily it speaks of the building in the singular. There are no specifications indicating what particular material was to be furnished, but conceding that the original arrangement included the furnishing of a garage, the affidavit was taken for the construction of a building, not for the repair or remodeling, and we find no evidence indicating that this door was in the contemplation of any of the parties but was simply an after occurrence, the cause for which no one was to blame unless it was the Molinaros in leaving the door open, subject to the wind. The door became injured and had to be replaced. The Molinaros never have claimed that the door should be furnished at the expense of Rossi or of the Lumber Company. The liability, so far as that is concerned, is not disputed.

To be properly included within the specified time, there must be a furnishing of material reasonably to be understood as contemplated or intended by the parties as a part of the material to be furnished and as included in the contract. Small items which are merely after thoughts, or the desirability or necessity for which arise from subsequent circumstances, without any connection with the original or real contract, do not have the effect of extending the time so as to include the whole account. A person may not make a general arrangement with a dealer for the purpose of entering into a general running account and then attempt to place a mechanic's lien upon property generally where that material may have been used, but, as provided by the statute, it must be furnished for the erection or repair or remodeling, or whatever the fact may be, of certain property and upon certain real estate.

We are not able to find that this door was furnished in such a way as to be a part of the material furnished for which a mechanic's lien might properly be sought, and the finding upon that proposition then is in favor of the defendants, the Molinaros, and the lien is held to be valid only as to the extent of $9.00, for the one item of the garage door.

FARR and POLLOCK, JJ, concur in the judgment.