## RORICK v. DEVON SYNDICATE, LTD.

No. 676. Argued April 24, 1939.—Decided May 22, 1939.

*Mr. George R. Effler,* with whom *Messrs. H. W. Fraser* and *R. B. Swartzbaugh* were on the brief, for petitioner.

*Mr. George D. Welles,* with whom *Mr. Fred E. Fuller* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The case is here on a writ of certiorari to the United States Circuit Court of Appeals for the Sixth Circuit. We granted the writ because the court below had decided an important question of local law in a way probably in conflict with applicable local decisions and probably had misconstrued certain federal statutes and a decision of this Court thereunder.

The basic question here involved is whether a federal district court, in the absence of jurisdiction *in personam* and after removal of a cause from a state court where jurisdiction *in rem* over certain property of a defendant

has already been acquired, can issue an order of attachment or garnishment against other property of the same defendant.

Petitioner, a resident of Ohio, brought suit on June 19, 1930, in a state court in Ohio against respondent, a nonresident corporation organized under Canadian law, on a contract claim for personal services rendered.[1] Summons was concurrently issued, but personal service was never had; and simultaneously, an affidavit in attachment and garnishment was filed. A second affidavit in attachment and garnishment was filed on June 27, 1930, naming additional persons; and shortly thereafter certain funds and property of respondent were garnisheed. Subsequently, service by publication was completed; and soon afterwards, and before judgment, respondent appeared specially and obtained a removal of the cause to the District Court of the United States for the Northern District of Ohio, Western Division. In the District Court respondent also appeared specially and moved to quash the service by publication and to dismiss the attachment and garnishment. Nothing further was done in the cause for over five years. Then, on February 17, 1936, petitioner, with leave of the District Court, filed a supplemental and amended petition repeating in substance the allegations of the original petition; and a supplemental affidavit in garnishment which named as garnishees the same persons designated in the original affidavits of June 1930 in the state court. On the same day, the District Court issued an order of attachment and notices to garnishees. Under the latter additional funds in the hands of one of the garnishees were reached. And on April 11, 1936, respondents again appeared specially in the District

---

[1] Paris E. Singer was also named a defendant in the original petition but died pending the action. Since subsequent proceedings were continued against respondent alone, the cause is treated as if Devon Syndicate, Limited, were the sole defendant.

Court, and moved, *inter alia*, to dismiss the attachment and garnishment under the supplemental affidavit of February 17, 1936. After removal to the District Court there was neither personal service, nor, so far as appears, service by publication.

By its motions of January 26, 1931, and April 11, 1936, respondent asserted that the affidavits in attachment and garnishment were defective and void under Ohio law; that there was no property of respondent within the jurisdiction of the District Court or the state court on which any valid attachment could be or was levied; that there was no property of respondent in the possession of any of the garnishees; that the attachment and garnishment and the service of summons were void by reason of incorrect designation of respondent; that there was no lawful service of summons under the supplemental and amended petition made on respondent; that the supplemental attachment and garnishment under the amended petition were also void for lack of personal service; and that the District Court had no jurisdiction over either the respondent or its property appropriate for the maintenance of this action.

After oral argument on respondent's motions, the District Court entered an order discharging the attachment and garnishment and striking the petition from the files of the court, on the grounds that the affidavits in attachment and garnishment, dated June 19 and June 27, 1930, were defective and void, and that the supplemental affidavit in attachment and garnishment was also void and ineffective, since no personal service had been made on respondent. On appeal to the Circuit Court of Appeals the judgment was affirmed on the grounds that the original attachment or garnishment in the state court was premature and void; that on removal the federal District Court could not validate an attachment not perfected in the state court proceeding; and that attachment may not

issue in a federal District Court until the defendant has been personally served or has voluntarily appeared.

Of the various questions raised below and briefed here, only those urged in the petition for certiorari and incidental to their determination will be considered on review. *General Talking Pictures Corp.* v. *Western Electric Co.,* 304 U. S. 175; *Connecticut Railway & Lighting Co.* v. *Palmer,* 305 U. S. 493.

Before coming to the basic question here involved, namely, whether the garnishment secured in the District Court under the supplemental affidavit of February 17, 1936, was void, there are two preliminary questions. These are (1) whether the notary public before whom the affidavits in attachment and garnishment of June 19 and June 27, 1930, were taken was disqualified, thus rendering the garnishment proceedings void and of no effect; and (2) whether the garnishments obtained in the state court were premature and void because they were secured without personal service and prior to the first publication of notice of constructive service.

*First.* The Ohio General Code provided that an affidavit might be used to obtain a provisional remedy such as attachment or garnishment (§ 11523), and that an affidavit might be made before any person authorized to take depositions (§ 11524). Sec. 11532 provided that "The officer before whom depositions are taken must not be a relative or attorney of either party, or otherwise interested in the event of the action or proceeding." The notary in question was D. W. Drennan, a member of the Ohio bar and of the bar of the District Court. Although Drennan had some private practice of his own, he was in the employ of a corporation, of which petitioner was president, and previously in the employ of a predecessor partnership, of which petitioner was a member. But he did not represent petitioner in this case; nor had he ever represented him as personal counsel; nor was he consulted

by petitioner with reference to this case; nor was he related to petitioner; nor did he have any financial stake in the outcome of this suit. His sole connection with the case was that he acted as notary on a few papers. Furthermore, the petition in this case alleged a cause of action personal to petitioner, not one on behalf of the corporation by which Drennan was employed or on behalf of its predecessor partnership.

Since Drennan was not a "relative or attorney" of petitioner, he was not disqualified to take the affidavit unless within the meaning of the Ohio statute he was "otherwise interested in the event of the action or proceeding." The District Court held that he was so interested. We do not so interpret the Ohio law. Absent some legal or material interest, it seems to us, on the basis of the Ohio authorities which we have found, that there must be some immediate interest in the action akin to that of a relative in order for the notary to run afoul of the statutory prohibition. Disability thus depends on the particular circumstances of each case—the degree of intimacy in relationship between petitioner and notary. In *Rhinelander Co.* v. *Pittsburgh Co.*, 15 Ohio C. C. (N. S.) 286, an Ohio court held that a young man working as a salaried employee for a firm of attorneys retained in the case was not disqualified by the foregoing section from taking an affidavit in the case as notary. The interest which disqualifies under the Ohio statute, said that Court, is "some legal, certain and immediate interest such as formerly disqualified a witness from testifying." *Id.*, p. 286. Certainly, if an employee of one who himself is disqualified to act as notary is qualified so to act, an employee of a corporation whose officer is suing not on behalf of the corporation but for himself would seem to be similarly qualified under Ohio law. This seems to us especially persuasive, since the notary in question was in fact taking not a deposition but an affidavit and since

the affidavit was not for use as evidence.[2] Accordingly, we conclude that the affidavits of June 19 and June 27, 1930, were not defective because they were sworn to before D. W. Drennan.[3]

[2] There is Ohio authority for the view that § 11532 of the Ohio General Code under which the notary's disqualification is asserted was intended only to define and regulate the taking of affidavits to be used as testimony in a judicial proceeding. *City Commission of Gallipolis* v. *State*, 36 Oh. App. 258. On the other hand, *Leavitt & Milroy Co.* v. *Rosenberg Bros. & Co.*, 83 Oh. St. 230; 93 N. E. 904, squarely held that an attachment was defective because the affidavit was made before a notary who was the attorney for the plaintiff in violation of § 11532—then § 5271 Rev. Stat. And though that case, so far as appears, has never been overruled, its holding and § 11532 were nevertheless before the court in *Evans* v. *Lawyer*, 123 Oh. St. 62; 173 N. E. 735. There the Court referred to certain sections of the General Code (including § 11532) which relate to execution of affidavits and said "The sections of the Code referred to relate to the mode of taking testimony, and are found under Part Third, Title IV, Division III, relating to procedure in common pleas court, in Chapter 3 in regard to evidence. We think these sections of the Code relate to affidavits to be used in the sense of evidence." *Id.*, p. 66. Though we are not justified on these authorities in concluding that the prohibitions contained in § 11532 are inapplicable to notaries before whom affidavits in attachment and garnishment are taken, nevertheless they lend support to the view that in considering whether or not a notary is "otherwise interested" in the event of the action within the meaning of the section, it is appropriate to give some weight to the function which the affidavit in question is to perform, in the absence of a contrary ruling by the Ohio courts.

[3] Another reason urged by respondent for the invalidity of the affidavits in question is that the notary was disqualified by § 121 of the Ohio General Code which provides: "No banker, broker, cashier, director, teller, or clerk of a bank, banker or broker, or other person holding an official relation to a bank, banker, or broker, shall be competent to act as notary public in any matter in which such bank, banker, or broker is interested." Respondent claims that the corporation of which petitioner was an officer and by which the notary was employed, as well as the predecessor partnership, was a municipal bond broker; that petitioner, being an

*Second.* Sec. 11279 of the Ohio General Code provides that "A civil action must be commenced by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued thereon." Sec. 11819 provides that "In a civil action for the recovery of money, at or after its commencement, the plaintiff may have an attachment against the property of the defendant" upon various enumerated grounds. In this case the petition was filed, summons was issued, and an affidavit in attachment and garnishment was filed—all on June 19, 1930. It would seem, therefore, that § 11819 was satisfied. But the Circuit Court of Appeals held that an attachment which issued before personal service was obtained, or before the beginning of publication for substituted service, was premature and void. Under that test the attachments and garnishments sought in the state-court on June 19 and June 27, 1930, were defective since personal service was never had and since service by publication was not commenced until several months later.

The Circuit Court of Appeals reached this conclusion in reliance upon its earlier decision in *Doherty* v. *Cremering,* 83 F. 2d 388, and upon the decision of the Supreme Court of Ohio in *Seibert* v. *Switzer,* 35 Ohio St. 661.

We think the Circuit Court of Appeals erred. The chronology of events in the *Doherty* case is the same as the chronology here—attachment was issued on the day the petition was filed and substantially in advance of commencement of service by publication. Personal service was not had. The court relied upon § 11230 of the Ohio General Code and upon *Seibert* v. *Switzer, supra.* Sec. 11230 is contained in Chapter 2 of Division 1 of

officer of the corporation, was himself a broker; and that therefore the notary was a "clerk of" or "other person holding an official relation to" a "broker." Suffice it to note (1) that the notary was not in the employ of petitioner; and (2) that neither the corporation nor its predecessor partnership appears to be "interested" in the action. As alleged, the action seems to be personal to petitioner.

Title IV of the Ohio General Code. Title IV is entitled "Procedure in Common Pleas Court." Chapter 2 of Division 1 is entitled "Limitation of Actions." Sec. 11230 provides: "An action shall be deemed to be commenced *within the meaning of this chapter,* as to each defendant, at the date of the summons which is served on him or on a codefendant who is a joint contractor, or otherwise united in interest with him. When service by publication is proper, the action shall be deemed to be commenced at the date of the first publication, if it be regularly made." (Italics added.)

It seems clear to us that the words "An action shall be deemed to be commenced within the meaning of this chapter" confine the operation of the section to matters concerning the limitation of actions, the subject to which the chapter is expressly devoted. The Supreme Court Commission of Ohio in *Bacher* v. *Shawhan,* 41 Ohio St. 271, so interpreted § 4988 Rev. Stats. (now § 11231 of the Ohio General Code) which provided: "An attempt to commence an action shall be deemed to be equivalent to the commencement thereof, within the meaning of this chapter, when the party diligently endeavors to procure service; but such attempt must be followed by service within sixty days." The court held that the trial court did not lose jurisdiction because service by publication was not commenced, personal service not being had, until some seven months after suit was brought and an order of attachment was issued and levied. The court said: "It will be observed that the restrictive words 'within the meaning of this chapter,' confine the operation of the section to matters concerning the limitations of actions. It seems to us that the legislative intent was to prevent parties from indefinitely prolonging a suspension of the statute by a mere attempt to sue." *Id.,* p. 272.

On that authority we conclude that "at or after its commencement" as used in § 11819 means the commence-

ment described in § 11279, not the commencement described in § 11230. Additional support for this conclusion is found in *Seibert* v. *Switzer*, 35 Ohio St. 661, on which the Circuit Court of Appeals relied for the contrary conclusion. There the validity of an order of attachment which had been issued and served prior to the filing of the petition was in issue. At that time § 11279 (then Civil Code, § 55) was identically the same as at present. Sec. 11819 (then Civil Code, § 191) was, so far as material here, substantially the same as it is now; *i. e.*, it allowed the plaintiff in a civil action for the recovery of money to have an attachment "at or after the commencement" of the action. Sec. 11820 (then Civil Code, § 192) at that time, as now, provided that the order of attachment should be made "by the clerk of the court in which the action is brought." And § 11821 (then Civil Code, § 193) required in case of attachment, as it does now, a bond by the "plaintiff" to the "defendant" except in case defendant was a non-resident or a foreign corporation. The court in *Seibert* v. *Switzer*, *supra*, held that the order of attachment was unauthorized and void,[4] and said: "No action was, in fact, commenced by the filing of a petition, until some three or four hours after the order of attachment was served and returned."

"The statute does not authorize an attachment except in an action, and the clerk of the court has no authority to issue the order of attachment until an action is brought and the relation of plaintiff and defendant is established in the case.

"An action is commenced or brought, within the meaning of sections 192 and 193, by the filing of a petition and

---

[4] It should also be noted that § 11230 (Civil Code, § 20) was substantially the same then as now. Though that section provided that "within the meaning of this section" an action where service by publication was proper should "be deemed commenced at the date of the first publication," the court determined the date of commencement by § 11279 without mentioning § 11230.

·causing a summons to issue thereon. Code, § 55 . . ."
*Id.,* p. 665.

The *Seibert* case and the *Bacher* case thus seem to be wholly consistent. An order of attachment issued prior to the filing of a petition and issuance of summons is void; an order of attachment issued after filing of the petition and the issuance of summons but prior to the commencement of service by publication is valid, though personal service is not had.

In view of these Ohio authorities, we conclude that the attachments or garnishments secured in the state court were not premature or void because obtained prior to personal service or before commencement of service by publication. See also, *St. John* v. *Parsons,* 54 Ohio App. 420; 7 N. E. 2d 1013. Those liens, having been obtained in the state court prior to removal, are preserved intact after removal. § 646 of the Revised Statutes (28 U. S. C. § 79).[5]

*Third.* This brings us to the main issue in the case— whether a federal District Court has the power to issue an order of attachment or garnishment in a removed cause if jurisdiction *in rem* has been obtained prior to removal. The Circuit Court of Appeals relied upon the rule laid down in *Big Vein Coal Co.* v. *Read,* 229 U. S. 31, that an attachment may not issue in a federal District Court

---

[5] Sec. 646 provides: "When any suit shall be removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant had in such suit in the State court shall hold the goods or estate so attached or sequestered to answer the final judgment or decree in the same manner as by law they would have been held to answer final judgment or decree had it been rendered by the court in which said suit was commenced. All bonds, undertakings, or security given by either party in such suit prior to its removal shall remain valid and effectual notwithstanding said removal; and all injunctions, orders, and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed."

where no personal service has been had upon defendant or where defendant has made no personal appearance. One of the earliest antecedents of the *Big Vein Coal Co.* case, *supra,* was *Toland* v. *Sprague,* 12 Pet. 300. In that case a citizen of Pennsylvania brought suit in the Circuit Court of the United States for the District of Pennsylvania against a citizen of Massachusetts who was domiciled abroad. No personal service was had, but an attachment was levied upon defendant's property in Pennsylvania. Sec. 739 of the Revised Statutes then provided that no civil suit should be brought in either the circuit or district court against any inhabitant of the United States by any original process in any other district than that whereof he was an inhabitant or in which he was found at the time of the serving of the writ. This Court by a divided vote concluded that an attachment could not be issued except as a part of, or together with, process served upon defendant personally. And in *Ex parte Railway Co.,* 103 U. S. 794, this Court concluded that since the defendant was an inhabitant of a state outside the jurisdiction of the federal court and was not found or served with process in that jurisdiction, no attachment could issue from that court against his property. It was on the basis of those two precedents that this Court later made its decision in *Big Vein Coal Co.* v. *Read, supra.* In that case, plaintiff instituted suit in the federal court. A summons was issued and returned not found. Thereafter an order of attachment was issued. It was held that unless jurisdiction *in personam* is obtained over the defendant, his estate may not be attached in the federal court, an attachment being but "an incident to a suit" and not a means of acquiring jurisdiction. *Id.,* p. 38. This conclusion was reached in spite of the fact that § 739 had been changed since *Ex parte Railway Co., supra,* by addition of a diversity of citizenship clause permitting suit "in the district of the residence of either the defendant or plain-

tiff," and in spite of § 915 of the Revised Statutes (28 U. S. C. § 726), discussed hereafter. Nevertheless, this Court held that since Congress had not explicitly provided for service by publication in such cases, attachment could be obtained only in cases where service was adequate for a judgment *in personam.*

The argument for extension or application of the rule followed from *Toland* v. *Sprague* to *Big Vein Coal Co.* v. *Read, supra,* to cases such as the instant one loses its persuasiveness. Ingrained in those decisions is the feeling that it would be unjust for a person to have his rights passed upon in the absence of the notice afforded by personal service, so that he might appear and defend himself. That philosophy was perhaps best expressed by Mr. Justice Miller sitting in circuit in *Nazoro* v. *Cragin,* 3 Dill. 474, 476, where he said, in 1873, that a contrary doctrine would "compel citizens of the Pacific Coast to go to New York to defend their property which happened to be there and would give the great central cities vast power." But that viewpoint had not been expressed by the Congress in § 646. That section gave validity in the federal court to attachments obtained in the state court prior to removal, by its provision that any attachment in the state court suit "shall hold the goods or estate so attached" to answer the final judgment or decree. And this Court has solicitously protected attachments obtained prior to removal, even though jurisdiction *in rem* had not been perfected in the state court by service by publication. *Clark* v. *Wells,* 203 U. S. 164. So to a considerable degree, this Court in pursuance of the policy of the Congress as expressed in § 646, has not adhered rigorously to the philosophy underlying the antecedents of the *Big Vein Coal Company* case. For most assuredly a defendant whose property is attached in a state court prior to removal may not have been given notice of the kind which personal service would provide, since the state pro-

cedure as in this case commonly permits attachment or garnishment where only service by publication can be made.

But we need not rely merely on inferences drawn from statutory construction, since the Congress has provided plaintiffs in federal courts with procedural remedies available in state courts. Sec. 915 of the Revised Statutes provides:

"In common-law causes in the district courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which were, on June 1, 1872, provided by the laws of the State in which such court is held for the courts thereof; and such district courts may, from time to time, by general rules, adopt such State laws as may be in force in the States where they are held in relation to attachments and other process. Similar preliminary affidavits or proofs, and similar security, as required by such State laws, shall be first furnished by the party seeking such attachment or other remedy."

This section when read with § 646, indicates to us that where jurisdiction *in rem* has been acquired prior to removal, plaintiff may obtain in the federal court after removal such orders of attachment or garnishment as would have been available to him had he been permitted to remain in the state court. Such interpretation merely makes it possible for a lien obtained in a state court prior to removal to be extended by the federal court to other property of the same defendant. It introduces no new element in the statutory scheme for, as we have said, the lien which § 646 protects may often have been obtained without personal service. The policy which recognizes the validity of a lien preserved by virtue of § 646, though personal service is lacking, permits extension of that lien by a federal District Court under like circumstances to other property of the same defendant by reason of § 915.

This holding can be brought within the rule of the *Big Vein Coal Company* case, *supra*, if that decision is narrowly limited. For in one sense it can be said that attachment or garnishment is here used only as an "auxiliary remedy." *Id.*, p. 37. The garnishment effected under the affidavit of February 17, 1936, if valid under Ohio law, would merely extend the proceedings *in rem* to reach other property of the same defendant. Accordingly, if that extension is permissible under § 915, it is not defective merely because jurisdiction *in personam* is absent. Whether or not such extension is permissible is a matter of state law on which we do not pass. Since the case will be remanded, that question and other questions raised by the respondent can be more appropriately disposed of by the District Court.

The judgment of the Circuit Court of Appeals is reversed, and the case is remanded to the District Court for further proceedings in conformity with this opinion.

*Judgment reversed.*