**Howard M. DUNN, Plaintiff,**

v.

**PRINTING CORPORATION OF AMERICA, Defendant,**

**and**

**Periodical Press Corp., Hughes Printing Co., Business Press, Inc., Science Press, Inc., Hughes Realty Investment Corp., Trade Press, Inc. and Publishers Printing-Rogers Kellogg Corporation, Garnishees.**

**Civ. A. No. 36679.**

United States District Court
E. D. Pennsylvania.

Sept. 3, 1965.

As Amended Oct. 5, 1965.

Samuel P. Lavine, of Steinberg, Richman, Price & Steinbrook, Philadelphia, Pa., for plaintiff.

Lewis H. Van Dusen, Jr., of Drinker, Biddle & Reath, Philadelphia, Pa., Marvin Schwartz and Lester L. Cooper, Jr., of Sullivan & Cromwell, New York City, for defendant and garnishees.

BODY, District Judge.

This is an action for damages for breach of contract brought by plaintiff, Howard M. Dunn, a resident of Pennsylvania, against defendant, Printing Corporation of America, a New York corporation with its principal place of business in New York City. Thus jurisdiction of the Court is based on diversity of citizenship.

Defendant has not registered to do business in Pennsylvania although it is alleged that defendant does considerable business in Pennsylvania including the maintenance of an accounting department at Third and Hunting Park Avenue, Philadelphia, Pennsylvania. Since the principal events out of which this cause of action arose occurred in New York, plaintiff attempted to effect service on defendant by proceeding under the 1963 amendment to Rule 4(e) of the Federal Rules of Civil Procedure, which provides that:

"Whenever a statute or rule of court of the state in which the district court is held provides * * * (2) for service upon or notice to * * * [defendant] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state [in which the district court is held], service may * * be made under the circumstances and in the manner prescribed in the statute or rule."

The state rules made applicable to this case by the aforestated Federal Rule are Rules 1251 through 1279 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix, dealing with writs of foreign attachment. Acting under these Pennsylvania rules, plaintiff served writs of foreign attachment on the seven garnishees in the following manner:

1. Periodical Press Corporation ("Periodical") is located in and was served in Philadelphia County, Pennsylvania;

2. Trade Press, Inc. ("Trade") is located in and was served in Philadelphia County, Pennsylvania;

3. Business Press, Inc. ("Business") is located in and was served in Lancaster County, Pennsylvania;

4. Science Press, Inc. ("Science") is located in and was served in Lancaster County, Pennsylvania;

5. Hughes Realty Investment Corporation ("Hughes Realty") is located in and was served in Monroe County, in the Middle District of Pennsylvania (28 U.S.C. § 118(b));

6. Hughes Printing Company ("Hughes Printing") is located in and was served in Monroe County, in the Middle District of Pennsylvania (28 U.S.C. § 118 (b)); and

7. Publishers Printing-Rogers Kellogg Corporation ("Publishers"), a company not named in the complaint or original writ of foreign attachment, is located in Long Island City, New York, in the Eastern District of New York (28 U.S.C. § 112(c)). Service was purportedly made on its assistant secretary, Richard S. Field ("Field") in Montgomery County, Pennsylvania.

On the basis of the foregoing facts, a motion was made by defendant, Printing Corporation of America, and the seven garnishees for an order, pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, vacating the writ of foreign attachment served on the garnishees and dismissing the action as to the defendant and garnishees. In order for this Court to properly dispose

of the above motion it must first resolve several issues which will be examined in turn.

## I.

### Whether Property Belonging to Defendant Held by Five Garnishees Lies Beyond the Jurisdiction of This Court to Attach

Prior to 1963 an action commenced by attachment or garnishment in a state court could be removed to a federal court if the ordinary conditions for removal were satisfied. See 28 U.S.C. § 1450; Rorick v. Devon Syndicate, Ltd., 307 U.S. 299, 59 S.Ct. 877, 83 L.Ed. 1303 (1939). However, these quasi in rem actions could not be initiated in a federal court. This historical anomaly [Currie, Attachment and Garnishment in the Federal Courts, 59 Mich.L.Rev. 337 (1961)] was remedied by the 1963 amendment to Rule 4(e) which permits the commencement of such actions in a federal court.

The specific state rule made applicable by Rule 4(e) in this case is Rule 1254(a) of the Pennsylvania Rules of Civil Procedure which stipulates that:

> "An attachment of personal property of the defendant may be issued in and only in a county in which
> (1) the property is located, or
> (2) a garnishee may be served."

Of the seven garnishees named, Trade and Periodical were the only ones served pursuant to the requirements of Rule 1254(a). The remaining five garnishees were served beyond the limits of Philadelphia County, the county in which this District Court sits. (Cf. list of garnishees and place of service, supra).

Plaintiff, however, urges this Court to construe the word "county" found in Rule 1254(a) to mean "federal district". Defendant and garnishees, on the other hand, argue that "county" must be interpreted literally with the result that the writs of foreign attachment should be vacated as to five of the garnishees (Business, Science, Hughes Realty, Hughes Printing and Publishers).

It is true that some federal courts have read the word "county" in state venue statutes as meaning "federal district". Erwin v. Barrow, 217 F.2d 522 (10th Cir. 1954); Setterlund v. Spierer, 11 F.R.D. 601 (S.D.Mo.1951); Weisler v. Matta, 95 F.Supp. 152 (W.D.Pa.1951); Iser v. Brockway, 25 F.Supp. 221 (W.D.Pa. 1938). These courts have felt that the state law was satisfied so long as the federal district encompasses the county in which the action must be maintained under state law. No case has been found, however, in which a state venue statute has been so construed in relation to a foreign attachment action brought in a federal court pursuant to state law. This Court is aware of the case of Gerr v. Emerick, 283 F.2d 293 (3d Cir. 1960), cert. denied Pennsylvania Turnpike Commission v. Gerr, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961), decided in this Circuit. This case held that the Pennsylvania Turnpike Commission is not clothed with the Commonwealth's sovereign immunity from suit and that the United States District Court for the Middle District of Pennsylvania is one of the "proper courts at the County of Dauphin" under a provision in the Pennsylvania Turnpike Act, 36 P.S. § 653e(c). Id. at 298. The Gerr case is distinguishable, however, on the ground that the District Court for the Middle District of Pennsylvania was actually held in Dauphin County. This District Court for the Eastern District of Pennsylvania is in Philadelphia County, and not in Lancaster or Montgomery counties, for example.

Therefore, this Court, in strictly construing both Rule 4(e) and Rule 1254(a), prefers a literal interpretation of the word "county". Such construction is based upon the sound principle that a defendant should not be prejudiced merely because plaintiff has selected a federal, and not a state forum. If a non-resident has property in only one county of Pennsylvania, it is a reasonable exercise of the state's discretion to limit an action begun by attachment to that county. And this federal district court must respect that judgment. Furthermore, the Third Circuit has remarked, "There is no hard-

ship on the plaintiff if he cannot get into federal court in the Eastern District of Pennsylvania. The state court is open to him." McCoy v. Siler, 205 F.2d 498, 500 (3d Cir. 1953), cert. denied, 346 U. S. 872, 74 S.Ct. 120, 98 L.Ed. 380 (1953).

Another reason supporting a literal interpretation of the Pennsylvania venue statute is the questionable utility of the use of quasi in rem jurisdiction in a case like this. From the evidence before this Court it appears that the only real connection which this action has with Pennsylvania is the fact that plaintiff resides here. Defendant is a New York corporation having its principal place of business in New York City. The contract, which is the subject matter of the action, was entered into, to be principally performed, and allegedly breached in New York.

The use of quasi in rem jurisdiction in a case of this type in which defendant is forced into defending an action begun by attachment or garnishment where defendant has little or no voluntary contact with the forum state, has been severely criticized as manifestly unfair by often subjecting a defendant to harassing techniques. Professor Carrington's thesis is that:

> "In the light of the emerging concept of personal jurisdiction, the quasi in rem procedure is rarely useful to plaintiffs except in cases which the defendant ought not be asked to defend in the forum chosen by the plaintiff."

Carrington, The Modern Utility of Quasi in Rem Jurisdiction, 76 Harv.L.Rev. 303 (1962). The Court believes that a strict interpretation of the word "county" in Rule 1254(a) of the Pennsylvania Rules of Civil Procedure will help to obviate this situation.

■ Having decided that Rule 4(e) makes the state rule 1254(a) applicable to this case in its entirety, there is no need for this Court to pass upon the interesting question of whether the doctrine of Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), compels the same result. Nor is it necessary to decide whether service of the

writs on Hughes Printing and Hughes Realty were ineffective because these garnishees were served in Monroe County in the Middle District of Pennsylvania. In addition, it is immaterial whether or not the garnishee, Publishers, does business in Montgomery County through its Assistant Secretary, Mr. Field, as alleged by plaintiff. Service having been made upon Field in Montgomery County, the attachment was ineffective since, as discussed above, this Court out of which the writ issued, is in Philadelphia County.

For the foregoing reasons then, the writs of foreign attachment will be vacated as to the garnishees: Business, Science, Hughes Realty, Hughes Printing and Publishers.

Although service upon Trade and Periodical was proper under Pennsylvania Rule 1254(a), as applied by Federal Rule 4(e), these two garnishees offer further arguments in support of their motion to vacate the writs of attachment.

## II.

Whether Trade Had in Its Possession Any Property of Defendant Subject to Attachment at the Time the Writ was Served

■ The garnishee, Trade Press, Inc., is located at Third and Hunting Park Avenue, Philadelphia, Pennsylvania, and the writ of foreign attachment was personally served upon Trade's Assistant Secretary at that location in Philadelphia County. Trade alleged in its garnishee's report that it had no "property" of the defendant subject to attachment at the time the writ was served within the meaning of Rule 1253 of Pennsylvania Rules of Civil Procedure which provides:

> "Any person may be made a garnishee and shall be deemed to have possession of *property* of the defendant if he
>
> (1) owes a debt to the defendant;
>
> (2) has property of the defendant in his custody, possession or control;
>
> (3) holds as fiduciary property in which the defendant has an interest; or

(4) holds the legal title to property of the defendant, whether or not in fraud of creditors." (Emphasis supplied)

However, plaintiff advances the novel argument that all of Trade's property is the property of defendant because Trade is a wholly owned subsidiary of defendant and, in effect, that Trade is the "alter ego" of the defendant. Plaintiff's argument has never before been advanced, nor will this Court adopt it in this case. Certificates of stock are included in the term "property" under Rule 1253. However, plaintiff does not allege that any shares of stock of Trade were attached and this Court finds as a matter of fact that no shares of Trade were attached as required under Pennsylvania law. Uniform Commercial Code, Act of April 6, 1953; P.L. 3, No. 1, 12A P.S. § 1–101 et seq.

For these reasons the writ of foreign attachment must also be vacated as to garnishee, Trade Press, Inc., since it is well settled under Pennsylvania law that attachment is fruitless and a nullity if the garnishee has no property of defendant at the time the writ is served. Falk & Co. v. So. Texas Cotton Oil Co., 368 Pa. 199, 82 A.2d 27 (1951).

## III.

Whether the Debt Owed to Defendant by Periodical Constitutes "Wages" or "Salary" Exempting It from Attachment

In their report four of the garnishees (Periodical, Business, Hughes Realty and Hughes Printing) admitted indebtedness to defendant in the form of amounts due under identical contracts by which defendant was to perform certain services. It is only necessary to examine the contract between Periodical and defendant however, since the writs have already been vacated as to the other three garnishees because the personal property [which includes debts under Rule 1253 (1)] lay beyond the jurisdiction of this Court to attach.

The contract between Periodical and defendant provides for defendant to per-

form a wide variety of services. Defendant and Periodical allege that these services are purely personal in nature and that the debts owing to defendant are therefore wages or salary exempt by virtue of the provision contained in Section 5 of the Act of April 15, 1845; P.L. 459; Pa.Stat.Ann. tit. 42, § 886. That Act stipulates:

"[T]he wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

Periodical pays defendant, for these services, a sum equal to eight percent of certain enumerated types of sales which both defendant and Periodical allege are intended to recompense defendant for salary expenses incurred in providing the services mentioned. Plaintiff, on the other hand, points out by affidavit that defendant is a large corporation employing some three thousand employees who perform a myriad of services and that the above-quoted Act was never intended to apply to a business like defendant's, since the eight percent compensation actually constitutes profits not exempt from attachment.

This is the precise question this Court must decide. The legislative history itself is silent on this subject. Therefore, an analysis of Pennsylvania case law becomes crucial in the resolution of this question. None of the cases found are precisely on point.

Compensation in the form of percentage commissions can fall within or without the exemption of the statute. In the ordinary case of a salesman who is paid a commission on his sales in lieu of wages, they are exempt. Hamberger v. Marcus, 157 Pa. 133, 27 A. 681 (1893). This is true even if the salesman received both a salary and commission, H. F. Watson Co. v. Christ, 62 Pa.Super. 604 (1916), or is compelled to pay his expenses from the sum received. Pennsylvania Coal Company v. Costello, 33 Pa. 241 (1859). However, commissions paid under a contract calling for payment of a percentage of sales by a manufacturer

and selling agent who recruited his own staff and made his own arrangements with that staff have been held to be more in the nature of "profits" than "wages" or "salaries". McCloskey v. Northdale Woolen Mills, 296 Pa. 265, 145 A. 846 (1929).

■ It is the opinion of this Court that the McCloskey decision is the closest factually to the case at hand. That case held that the compensation owing to the defendant constituted wages in part and profits in part. While the legislature could hardly have intended to deprive, by virtue of attachment, the employees of a corporation such as defendant, Printing Corporation of America, of the salaries they rightfully earned merely because of the existence of a corporate form, neither did they intend the Act to exempt that part of the compensation constituting profits. In view of this, the same disposition will be made of this issue as was done in the McCloskey case, that is, to allow the writ of attachment until such time as more specific answers are filed in order to ascertain more fully the particular facts. For as Mr. Justice Sadler remarked, "In this way the debtor, the creditor and the garnishee may be protected in the enjoyment of their respective rights in relation to the matter under investigation." McCloskey v. Northdale Woolen Mills, 296 Pa. 265, 270, 145 A. 846, 848 (1929).

## IV.

Whether the Unliquidated Nature of the Debt Owing to Defendant by Periodical Makes It Immune from Attachment

■ The final argument advanced in favor of vacating the writ of attachment as to the garnishee, Periodical, is that the amount it owed to defendant under the contract was unliquidated and not capable of liquidation according to any fixed or established standard at the time the writs were served and hence, was not a "debt" under Rule 1253 of the Pennsylvania Rules of Civil Procedure which provides that:

" * * * [a]ny person may be made a garnishee and shall be deemed to have possession of property of the defendant if he (1) owes a debt to the defendant; * * *." (Emphasis supplied)

Plaintiff contends that the fact that the debt is not wholly liquidated, is immaterial. In support of his position, plaintiff cites the case of Pellerito v. Seiden Sports Wear, Inc., 20 Pa.Dist. & Co.R.2d 281 (1959), which held that an unadjusted and unliquidated claim for loss under a fire insurance policy is property subject to attachment. The lower court in Pellerito relied upon an early decision by the Supreme Court of Pennsylvania, also involving a fire insurance policy. Girard Fire and Marine Ins. Co. v. Field, 45 Pa. 129 (1863). In the Girard case there was no dispute as to the amount of the loss, for that amount was being determined without arbitration, and with calculation only. However, in an important piece of dictum the Court went on to say that not every unliquidated claim is beyond the reach of the attachment process. The Court also said that a contract obligation, the amount of which was ascertained or susceptible of ascertainment by some standard referable to the contract itself might be the foundation of a proceeding by way of foreign attachment without reference to the technical definition of "debt".

This Court adopts the obiter dictum of the Girard case and is of the opinion that the eight percent compensation owing to defendant is "susceptible of ascertainment by some standard referable to the contract".

For these reasons the writ will not be vacated as to Periodical with regard to the issue of the unliquidated nature of the claim.

## V.

Whether the Motions to Vacate the Attachments as to Trade Press, Hughes Realty, and Hughes Printing Should be Stayed Until Disposition of the Discovery Proceedings

■ When plaintiff attempted to take the depositions of the garnishees, Trade Press, Hughes Realty and Hughes

Printing, they refused to appear and filed a motion for a protective order under Rule 30(b) of the Federal Rules of Civil Procedure. That motion is still pending. Plaintiff therefore contends that if the writs of attachment are vacated as to these garnishees before the discovery issue is decided, he would be deprived of the opportunity of taking depositions "at any time" pursuant to Rule 26 of the Federal Rules of Civil Procedure by the dual manuever of blocking depositions and moving to dismiss. Plaintiff's contention is without merit. What he fails to appreciate is that the main reason these garnishees asked for a protective order under Rule 30(b) was to avoid the costly and time consuming task of answering depositions since their motion to vacate the writs was filed simultaneously in this Court, and if successful would obviate entirely the need for such discovery. The writs have been vacated as to Trade, Hughes Realty and Hughes Printing for reasons explained earlier, and plaintiff's request to stay the motions to vacate the attachments is therefore denied.