**FEDERAL DEPOSIT INSURANCE CORPORATION, a Federal corporation, Appellant,**

v.

**Nathan GREENBERG, Appellee.**

**No. 71–1358.**

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1973.

Decided Nov. 6, 1973.

**10**

Gregory M. Harvey, Philadelphia, Pa., for appellant; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Bernard Chanin, Philadelphia, Pa., for appellee; Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., of counsel.

Before STALEY, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Juge.

This appeal involves a narrow question of procedural law: whether Federal Rule of Civil Procedure 4(e)(2), provid-ing for service in quasi-in-rem actions, requires compliance with the rule of venue applied in Pennsylvania attachment proceedings. We hold that it does not.

Appellant Federal Deposit Insurance Corporation (FDIC) instituted this action against appellee Nathan Greenberg, a Massachusetts resident, to set aside the transfer of real property and capital stock from appellant's debtor (Martin Decker) to appellee.[1] Subject matter jurisdiction of this action is vested in the District Court pursuant to 12 U.S.C. § 1819.

In order to obtain quasi-in-rem jurisdiction below, FDIC caused a Writ of Foreign Attachment to issue against (1) three tracts of real estate in Montgomery County, Pennsylvania (referred to as One, Two, and Three Decker Square), (2) one tract of land in Philadelphia County, and (3) 500 shares of the capital stock of Decreal Corporation.[2] Pursuant to a pretrial motion by appellee (Greenberg), the District Court for the Eastern District of Pennsylvania (wherein this action was brought), sitting in Philadelphia County, vacated the attachments of the Montgomery County realty and the capital stock, 52 F.R.D. 240. FDIC appeals from the order vacating both attachments.[3]

### I. Attachment of the Realty

The District Court predicated its order on the "borrowing" provision of

---

1. The merits of this controversy are not before this Court at the present time. FDIC, in its complaint, alleges that Martin Decker entered into a sales agreement with his joint venturer (the "Canco interests") whereby Decker agreed to purchase Canco's interest in Pennsylvania real estate. Pursuant to the sales agreement, and to assure his performance, Decker delivered to an escrow agent deeds representing his interest in the realty and assignments of his interest in the capital stock of Decreal Corporation, a Pennsylvania corporation. Both the sales agreement and the escrow agreement provided that the escrow agent would deliver the deeds and assignments to Greenberg (as trustee for the Canco interests) upon Decker's failure to perform his obligations under the sales agreement. FDIC alleges that as Decker's creditor, it is entitled to set aside the transfer resulting from Decker's purported forfeiture on October 16, 1970.

2. A writ was issued to attach the 500 shares of stock despite the fact that FDIC was unable to determine the precise location of the stock certificates. Apparently, defendant-appellee was also unaware of the location of the certificates at all times relevant to the District Court's order. See Appendix at 21a.

3. As to both the property in Montgomery County and the capital stock, the District Court's order has the effect of dismissing FDIC's cause of action. The order is therefore appealable as a final order pursuant to 28 U.S.C. § 1291. See 9 Moore's Federal Practice § 110.08 [1].

Fed.R.Civ.P. 4(e)(2) and on its (the Court's) interpretation of Pennsylvania foreign attachment procedure. With regard to quasi-in-rem actions originating in the federal courts, Rule 4(e) provides:

> Whenever a statute or rule of court of the state in which the district court is held provides . . . (2) for service upon or notice to [a party not an inhabitant of or found within the state] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of the property located within the state, service . . . may be made under the circumstances and in the manner prescribed in the statute or rule.

The writ of attachment for One, Two, and Three Decker Square (Montgomery County) was issued in Philadelphia, there being no place within Montgomery County wherein federal district court is held.[4] The District Court found that this procedure did not comply with Pennsylvania foreign attachment law.[5] Specifically, the Court vacated the attachment of the Montgomery County property on the ground that the writ was issued against property located in a county other than the county in which the Court sits, violating Pennsylvania Rule 1254. This rule provides:

> "Venue.
>
> (a) An attachment against personal property of the defendant may be issued in and only in a county in which
>
> (1) the property is located, or
>
> (2) a garnishee may be served.

> (b) An attachment against real property of the defendant may be issued in and only in a county in which all or any part of the property is located."

Implicit in the District Court's decision is the assumption that Federal Rule 4(e)(2) embraces, at the least, the above provision of the Pennsylvania attachment statutes and thereby automatically requires vacation of the foreign attachment once it is established that Pennsylvania Rule 1254 has been violated.[6]

Literally viewed, we cannot dispute the factual conclusion that Rule 1254 has been contravened. However, we reject the implicit assumption made by the District Court and hold instead that failure to comply with the state venue statute does not vitiate otherwise proper service under Federal Rule 4(e)(2).

Prior to 1963, quasi-in-rem actions could not be commenced in federal court. Big Vein Coal Company v. Read, 229 U.S. 31, 33 S.Ct. 694, 57 L.Ed. 1053 (1913). Actions commenced in state courts by attachment could, however, be removed to federal district courts provided the ordinary conditions for removal were satisfied. 28 U.S.C. § 1450; Clark v. Wells, 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138 (1906). To eliminate this anomaly, the 1963 Amendments to the Federal Rules included a provision— Rule 4(e)(2)—specifically permitting the initiation of quasi-in-rem actions in district court.[7]

Federal Rule 4(e)(2), looking as it does to state law, is clearly a borrowing provision. Cf. Wright and Miller 4 Federal Practice and Procedure § 1121

---

4. Court for the Eastern District of Pennsylvania is held at Allentown (Lehigh County), Easton (Northampton County), Reading (Berks County) and Philadelphia (Philadelphia County). 28 U.S.C. § 118. In total, throughout the entire State of Pennsylvania, District Court is held in only 11 of the 67 counties. 28 U.S.C. § 118.

5. 12 P.S.App.R.C.P. 1251 et seq.

6. In its penultimate paragraph, the District Court focused upon the issue of whether Rule 1254 had been violated:

> . . . it is clear that Rule 1254 prohibits in state court actions attachments such as those in issue. We do not believe that we should allow plaintiff to circumvent the requirements of 1254 by permitting such attachment in Federal Court. To do so would be to seriously attenuate the provisions of the rule.
>
> cite 52 F.R.D. at 242.

7. 2 Moore's Federal Practice ¶ 4.32[2].

(1969). At the outset, it is imperative to recognize that 4(e)(2) does not require a wholesale adoption of state quasi-in-rem procedure. Rather, Rule 4(e)(2) borrows only the methods of *service* employed in state quasi-in-rem proceedings. Procedural matters unrelated to service are not embraced within the provisions of Rule 4(e)(2), even where such matters may be identified as part of state attachment law. The question raised by the instant case is whether Pennsylvania Rule 1254 is an element of the State's service requirements.

Rule 1254 in effect identifies the court from which writs of foreign attachment shall issue. In a quasi-in-rem proceeding, the court with custody of the res is normally the court that will consider the underlying legal dispute. Thus, Rule 1254 would operate to name the court in which attachment actions will proceed, a function of a venue provision. The title of Rule 1254—"Venue" —further convinces us that the primary purpose of the rule is to identify the location in which state quasi-in-rem proceedings are to be held.[8]

■■ The concepts of service (the concern of Rule 4(e)(2)) and venue (the concern of Rule 1254) are distinct and not to be confused. 1 Moore's Federal Practice ¶ 0.140[3]. Service of process, a prerequisite of jurisdiction, relates to the power of a court to adjudicate. Venue, on the other hand, is a limitation on the exercise of that power relating to the locality of the lawsuit. Olberding v. Illinois Central Railway Company, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953).

■ We are convinced that Rule 4(e)(2) does not direct federal courts to apply state venue procedures such as Pennsylvania's Rule 1254. Rule 4(e)(2) is to be construed as relating solely to the issue of service, leaving venue to be determined by normal application of federal law.[9] See Great American Insurance Company v. Louis Lesser Enterprises, 353 F.2d 997, 1007 (8th Cir. 1965); Wright and Miller, 4 Federal Practice and Procedure § 1112; Advisory Committee Notes on the 1963 Amendments to Rule 4(e) of the Fed.R. Civ.P. We base our conclusion that Rule 4(e)(2) does not borrow state venue law on several factors.

■■ The venue of federal courts is a matter of federal law. In McCoy v. Siler, 205 F.2d 498, 499 (3d Cir.), cert. denied, 346 U.S. 872, 74 S.Ct. 120, 98 L. Ed. 380 (1953), this Court emphasized the dominance of federal law in determining the venue of the district court, declaring that "a state cannot by legislation modify or repeal a Congressional statute on the venue of federal courts." Similarly, in diversity cases, federal courts are not bound by state venue laws, despite the fact that the District Court is sitting as a court of the state in which it is located. Erwin v. Barrow, 217 F.2d 522 (10th Cir. 1954). As a statement of procedure, Rule 4(e)(2) speaks of service and not of the distinct concept of venue. Had the Supreme Court and Congress intended that Rule 4(e)(2) borrow state venue law, and thereby limit existing federal venue law, we feel confident that such a direction would have been express. Indeed, Federal Rule 82, declaring that the Federal Rules shall not be construed to extend *or limit* the venue of the district courts, manifests a contrary intent.

In his discussion of the borrowing of state law for the purposes of federal

---

8. Pennsylvania Rule 129 provides that:
 The title or heading of a rule may be considered in the construction thereof. 12 P.S. App.R.C.P. 129.

9. As a suit to set aside the transfer of specific property, FDIC's action is local in nature. Collett v. Adams, 249 U.S. 545, 550, 39 S.Ct. 372, 63 L.Ed. 764 (1919). The plain inference from 28 U.S.C. § 1392(b) is that in local actions, where the property is located within a single district, the proper venue is that district. 1 Moore's Federal Practice ¶ 0.141 [3], n. 1. As the attached real property is located within Montgomery County, § 1392(b) mandates the Eastern District of Pennsylvania as the proper forum for venue purposes.

service of process, Professor Wright mentions that:

> Frequently, state law conditions the use of a particular means of service . . . on the action being brought in the county in which the transaction occurred. Venue restrictions of this type are not binding in a federal court; instead it usually is sufficient that suit is being brought in the federal district that includes the county in question, and some courts have permitted even broader geographic latitude in utilizing state methods of process. There is some indication, however, that the federal courts may apply a stricter rule when service in a quasi-in-rem is involved; indeed, one court has held that the word "county" in a state quasi-in-rem statute must be read literally. [Dunn v. Printing Corporation of America, 245 F.Supp. 875 (E.D.Pa.1965)] [10]

In *Dunn,* the District Court was confronted with a situation identical to that presented in the instant case. That Court offered two reasons to support its conclusion that 12 P.S.App.R.C.P. 1254 precluded garnishment in counties other than those in which the district court sits. First, the Court theorized that out-of-state residents should not be prejudiced merely because a plaintiff chooses a federal rather than a state forum. 245 F.Supp. at 878. Secondly, the *Dunn* Court cited the "questionable utility of the use of quasi-in-rem jurisdiction" as a factor in encouraging a literal interpretation of Rule 1254. 245 F.Supp. at 879.

We are not persuaded by the *Dunn* reasoning. In the first instance, the prejudice involved is no greater than that normally sustained in diversity cases. Such prejudice, if indeed there is

any,[11] is minimal. As to the questionable utility of quasi-in-rem proceedings, this is a matter of legislative, and not judicial, concern. We note also that adherence to the *Dunn* rationale would require incorporation into 4(e)(2) of not only the venue provision, but also the minutiae of the entire attachment procedure of 12 P.S.App.R.C.P. 1251 through 1279.[12] Such a sweeping result was never intended by the adoption of Federal Rule 4(e)(2).

Indeed, were we to adopt the logic of *Dunn* (upon which the District Court in the instant case relied heavily) we would be repudiating the very purpose for which Rule 4(e)(2) was adopted. Had FDIC commenced this action in state court in Montgomery County, and had appellee thereafter removed to the district court, jurisdiction and venue would have been proper in the Eastern District. 28 U.S.C. §§ 1441(a), 1450 and 1392(b). *See also* Clark v. Wells, *supra.* To hold that this action could not be commenced in the district court for the Eastern District would be to reintroduce the anomaly Rule 4(e)(2) was designed to eliminate.

We therefore conclude that the District Court erred in finding itself bound by Pennsylvania Rule 1254. As the attachment of the property in Montgomery County was challenged on no ground other than its conflict with Rule 1254, the Court below should not have vacated the attachment as to One, Two, and Three Decker Square. The order of the District Court vacating the attachment of the real estate will be reversed and the cause remanded with directions to proceed accordingly.

II. Attachment of the Capital Stock

The District Court vacated the attachment of the capital stock on the ground

---

10. Wright and Miller, 4 Federal Practice and Procedure, § 1112 (1969).

11. This Court fails to see how appellee Greenberg, a Massachusetts resident, is prejudiced by litigating in Philadelphia County rather than in Montgomery County.

12. The District Court stated in *Dunn* that: The state rules made applicable to this case by the aforestated Federal Rule [4] (e)(2)] are Rules 1251 through 1279 of the Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix, dealing with writs of foreign attachment.
245 F.Supp. at 877.

that Rule 1254 had been violated. Although we repudiate this rationale, a concession made at oral argument before this Court moots the issue. Counsel disclosed that the 500 shares of stock, not having manually been seized, and previously thought to have been destroyed, lost, or their whereabouts unknown, have since been located in Massachusetts, thereby making vacation of the attachment proper.

 In affirming the vacation of the attachment of the capital stock, we are mindful that there has not as yet been an adjudication on the merits of this controversy. Without such an adjudication, FDIC is not barred from engaging in further appropriate attempts to attach the identical res for the identical cause of action. Neifeld v. Steinberg, 438 F.2d 423, 432 (3d Cir. 1971).

Accordingly, the issue of the capital stock attachment having been mooted by concession of counsel, the order of the District Court dated February 22, 1971 vacating the stock attachment will be affirmed.[13]

---

13. There being no res judicata effect to be given to our determination, we need not follow the instructions of United States v. Munsingwear, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (established practice where case is mooted on appeal is to reverse or vacate the judgment below and remand with a direction to dismiss), particularly where as here the District Court has directed vacation of the attachment.